763 A.2d 136

**In re ANTHONY R.**

**No. 4, Sept. Term, 2000.**

Court of Appeals of Maryland.

Dec. 6, 2000.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Appellant, Anthony R., was charged as a juvenile under petition number 399021021 and petition number 399085025. Prior to trial, appellant filed a motion for the juvenile court to dismiss petition 399021021 because the petition was not filed in accordance with Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–812(b) of the Courts and Judicial Proceedings Article.[1] After a hearing, the motion was denied. A motion to dismiss petition 399085025 was also filed prior to trial and was also denied. After adjudication hearings, the juvenile court found facts to sustain both petitions. A disposition hearing was held on August 31, 1999, at which time a delinquency finding was made and appellant was placed on indefinite probation. Appellant filed an appeal on September 21, 1999 to the Court of Special Appeals, appealing the juvenile court's denial of the two motions to dismiss. We granted certiorari on our own motion prior to consideration by the Court of Special Appeals. Appellant presents two questions:

1. Did the juvenile judge err in holding that the Court of Appeals decision in *In re James S.*[, 286 Md. 702, 410 A.2d 586 (1980) ], was no longer good law and in therefore refusing to dismiss the Petition filed against the Appellant in violation of the time requirements of Courts and Judicial Proceedings Article, [section] 3–812(b)?

2. Did the juvenile judge err in ruling that the statute of limitations did not apply to juvenile offenses?

We answer yes to questions I and II. We reverse the findings of the trial court in petition 399021021 and in petition

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** All references to section 3–812 are to this subsection unless otherwise cited.

399085025 and shall direct that court to dismiss those petitions.

## Facts

The allegations of petition 399085025[2] were first made by Corey B., based on an alleged incident on December 3, 1997. Corey B. stated that he was on a bus, going to school, when a group of approximately nine boys boarded the bus. One of these boys, Generio, approached Corey B. and questioned him as to why he had hit Generio's cousin. Corey B. replied that he did not know anything about the incident at which time Generio struck Corey B. The other boys in the group, including appellant, then started to attack Corey B. Corey B. testified that appellant was one of the boys who hit him. Appellant testified that he did not hit Corey B. and he did not witness any other boys hitting him.

The allegations of petition 399021021 occurred on September 14, 1998. Corey B. testified that he was in the cafeteria at Patterson High School when he was approached by appellant and two other boys. The three boys asked Corey B. if he wanted to fight. The boys left when he responded that he did not want to fight. Later in the day, Corey B. was confronted by the same three boys. Corey B. testified that appellant hit him in the face and when Corey B. fought back, all three boys attacked him. Appellant testified that he did not hit Corey B. that day.

A hearing was held before the Circuit Court for Baltimore City, sitting as a juvenile court, on April 28, 1999, at which time appellant argued that petition 399021021 should be dismissed because the State failed to comply with the time requirements of section 3–812. Under section 3–812(b), the

---

2. Appellant, in his brief submitted to the Court, incorrectly identified the charges for petition 399085025 as being for petition 399021021 and vice versa. Appellant also misnumbered case 399085025 as 399085205 in part of his brief. After a review of the record and the transcript, we have been able to determine the correct numbers and charges for each petition. Appellee had accepted appellant's facts without identifying the mistakes.

State's Attorney shall prepare and file a delinquency petition within thirty days of receipt of a referral from the intake officer. The State's Attorney received the referral from the intake officer on December 15, 1998, but did not file the delinquency petition until January 21, 1999, seven days after the thirty-day deadline. After the hearing, the juvenile court kept the matter *sub curia*, granting appellant time to file a written brief in support of his motion. Appellant filed a brief on April 30, 1999, in which appellant stated that in accordance with *In re James S.*, 286 Md. 702, 410 A.2d 586 (1980), petition 399021021 should be dismissed with prejudice for the State's failure to comply with section 3–812(b).

The juvenile court filed a Memorandum Opinion and Order on May 11, 1999, denying appellant's motion to dismiss. In its opinion, the court stated that:

Maryland courts have made it abundantly clear that dismissal is not appropriate when the mandatory time provisions are not complied with regarding the intake phase, adjudication, disposition, and restitution hearings in juvenile cases. After considering statutory changes to Section 3–812(b), *In re James S.*, post-*James* case law, Maryland Rule 1–201, and the overall purpose of the Juvenile Causes Act, this Court concludes that a bright line test or blanket rule that dismissal is mandated is not appropriate. Instead, the better approach is to examine the totality of the circumstances and the facts of each case to determine the sanction for noncompliance with the statute. Under some circumstances, dismissal with prejudice will be the proper sanction for failure to comply with Section 3–812(b). However, after considering the nature of the charges and the fact that the respondents have not been detained as a result of the delay, this Court does not believe that dismissal is required. . . .

Appellant thereafter filed a Motion to Dismiss both petitions on July 6, 1999. In the motion, appellant claimed that under petition 399085025 he had been denied his right to due process and his right to a speedy trial based on the period of delay until the hearing and that the State's failure to file with the court and serve on appellant an order to extend the State's

time for petitioning in the delinquency matter of petition 399085025 made the extension ineffective.[3] The court heard oral arguments on the motion on July 7, 1999, before the adjudication hearing. At the hearing, appellant renewed his claims from his motion to dismiss and also claimed that the State violated Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 5–106 of the Courts and Judicial Proceedings Article,[4] by not prosecuting a misdemeanor within one year after the offense was committed. The court dismissed the due process and speedy trial claims based on its analysis of Supreme Court and Maryland case law. The court also dismissed appellant's last issue about the applicability of section 5–106, stating that:

> The Court believes that based on the purposes of the Juvenile Causes Act, as detailed in this Court's memorandum, opinion, and order dated May 11, of accountability, responsibility, the Court does not believe that that section applies to the Juvenile Causes Act, and accordingly, will deny the [appellant's] motion to dismiss on that ground as well.

The adjudication hearing was then held and the court found that under petition 399085025, there was evidence to sustain the facts as to the second degree assault. The court found petitioner "not involved" in the reckless endangerment charge. Under petition 399021021, the court found petitioner "involved" as to both second degree assault and molesting a student on school property under Maryland Code (1978, 1999 Repl.Vol., 2000 Supp.), section 26–101 of the Education Article.

Appellant appealed to the Court of Special Appeals. Before consideration by the Court of Special Appeals, we granted certiorari on our own motion.

---

**3.** In light of the questions presented, we need not address the affect of a failure to serve the extension request and order on appellant or the failure to include them in the file.

**4.** All references to section 5–106 are to this article, unless otherwise cited.

### Discussion

We will first examine the legislative history of section 3–812 and address appellant's first question. We will then address whether the statute of limitations in section 5–106 applies to juvenile actions.

### A. Section 3–812

We commence our analysis of section 3–812 by attempting to ascertain the intent of the legislature. As we said in *State v. Bell,* 351 Md. 709, 720 A.2d 311 (1998):

> We have said that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought first in the actual language of the statute. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks,* 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss,* 217 Md. 133, 136, 141 A.2d 734, 736 (1958). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent. *Marriott Employees,* 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A.2d 35, 41 (1968).
>
> . . . .
>
> This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.'" *Stan-*

*ford v. Maryland Police Training & Correctional Comm'n,*
346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in
original) (quoting *Cunningham v. State,* 318 Md. 182, 185,
567 A.2d 126, 127 (1989)). To this end,

[w]hen we pursue the context of statutory language, we
are not limited to the words of the statute as they are
printed.... We may and often must consider other "ex-
ternal manifestations" or "persuasive evidence," including
a bill's title and function paragraphs, amendments that
occurred as it passed through the legislature, its relation-
ship to earlier and subsequent legislation, and other mate-
rial that fairly bears on the fundamental issue of legisla-
tive purpose or goal, which becomes the context within
which we read the particular language before us in a
given case.

... [I]n *State v. One 1983 Chevrolet Van,* 309 Md. 327,
524 A.2d 51 (1987), ... [a]lthough we did not describe any
of the statutes involved in that case as ambiguous or
uncertain, we did search for legislative purpose or mean-
ing—what Judge Orth, writing for the Court, described as
"the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59.
We identified that scheme or purpose after an extensive
review of the context of Ch. 549, Acts of 1984, which had
effected major changes in Art. 27, § 297. That context
included, among other things, a bill request form, prior
legislation, a legislative committee report, a bill title,
related statutes and amendments to the bill. *See also*
*Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in
which we considered legislative history (a committee re-
port) to assist in construing legislation that we did not
identify as ambiguous or of uncertain meaning.

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33 (some
citations omitted).

*Id.* at 717–19, 720 A.2d at 315–16 (some alterations in original);
*see Williams v. Mayor & City Council of Baltimore,* 359 Md.
101, 115–17, 753 A.2d 41, 48–49 (2000); *Riemer v. Columbia
Medical Plan,* 358 Md. 222, 235–36, 747 A.2d 677, 684–85

(2000); *Laznovsky v. Laznovsky,* 357 Md. 586, 606–07, 745 A.2d 1054, 1065 (2000).

Chapter 554 of the Laws of Maryland of 1975 (House Bill 483) revised the statutes pertaining to juvenile actions, establishing the Juvenile Causes Act. Chapter 554, in final form, stated in its title that it had the following purpose:

> FOR the purpose of generally revising and recodifying the law concerning Juvenile Causes, creating a uniform law for Juvenile Causes, providing for the jurisdiction of the courts to hear juvenile causes, setting forth procedures, powers, duties, and limitations with respect to judicial and executive personnel in connection with juvenile causes, and relating generally to juvenile causes.

Section 3–812(b), as originally enacted by Chapter 554, read:

> (b) Petitions alleging delinquency shall be prepared and filed by the State's attorney. All other petitions shall be prepared and filed by the intake officer.

Section 3–812(b) was amended by Chapter 814 of the Laws of Maryland of 1978 (Senate Bill 551).[5] In its amended form, section 3–812(b) stated that the State's Attorney "shall" file a delinquency petition within fifteen days of receiving a referral. It was clear that the General Assembly wanted juvenile actions to be processed expeditiously. The statute was in this form when we analyzed it in *In re James S.*

In the case of *In re James S., supra,* we held that a petition filed under section 3–812(b) must be dismissed, with prejudice, if not filed within the designated time period. At that time, section 3–812(b) stated, in relevant part, that "[p]etitions alleging delinquency . . . shall be prepared and filed by the State's [A]ttorney. A petition alleging delinquency shall be filed within 15 days after the receipt of a referral from the intake officer." We paid close attention to the word "shall" and its generally mandatory nature. We stated that:

---

**5.** There have been various amendments to section 3–812 and specifically 3–812(b). We will only discuss the amendments that are relevant to the issues presented in the case at bar.

This Court most recently considered the word "shall" to be mandatory in *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979). That case involved interpretation of Maryland Rule 746 which in turn was based on Maryland Code (1957, 1976 Repl.Vol.) Art. 27, § 591 relative to prompt trial of criminal charges in the circuit courts and the Criminal Court of Baltimore. In the opinion on the motion for reconsideration we said:

> Under settled principles of statutory construction, the word "shall" is ordinarily presumed to have a mandatory meaning. *Johnson v. State*, 282 Md. 314, 321, 384 A.2d 709[, 713] (1978); *Moss v. Director*, 279 Md. 561, 564–565, 369 A.2d 1011[, 1013] (1977); *United States Coin & Currency v. Dir. [of Finance]*, 279 Md. 185, 187, 367 A.2d 1243[, 1244] (1977); *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169–170, 338 A.2d 248[, 251] (1975), and cases there cited. Moreover, if it were intended that the deadline for trial of the case was not mandatory and could be overlooked whenever convenient, there would have been no necessity for the further provision in the statute and rule requiring "extraordinary cause" and permission of the county administrative judge for an extension of the deadline. [*Id.* at 334, 403 A.2d at 369.]

*In re James S.*, 286 Md. at 708, 410 A.2d at 589. We also were aware of the similarities between the language in section 3–812 and other statutes that limited actions. We stated that:

> We are struck by the similarity between the language used in the statute here under consideration and that in the various limitations of actions found in Code (1974, 1979 Cum.Supp.) Title 5, Subtitle 1, Courts and Judicial Proceedings Article. Here the words "shall be filed within 15 days" are used. In each of those sections the words "shall be filed" or "shall be instituted" within a specified period of time are used. For instance, § 5–101 specifies, "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Section 5–105 provides, "An action for as-

sault, battery, libel, or slander shall be filed within one year from the date it accrues." Section 5–106(c) states, "A prosecution for Sabbath breaking or drunkenness shall be instituted within 30 days after the offense was committed," while § 5–106(a) says, "Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed." Section 5–107 requires that "[a] prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed." The wording used in these sections is but little changed from that previously appearing in Code (1957) Art. 57 where, for instance, § 12 states, "All actions or prosecutions for blasphemy and Sabbath breaking, or drunkenness shall be made within one month after the fact." No one would contend seriously that the language of these limitations statutes is directory rather than mandatory.

*Id.* at 711–12, 410 A.2d at 590–91. We went on to hold that:

We see this statute as clearly and unambiguously requiring that a petition alleging delinquency must be filed within 15 days after the receipt of a referral from the intake officer. We view this as entirely within the scheme set down in the act for expediting juvenile matters. Once the issue of a tardy filing was raised here, dismissal of the delinquency petition was mandated. Thus, it is virtually the same as the dismissal required in the case of an ordinary civil action filed three years and one day "from the date it accrues" or a prosecution for assault (a common law misdemeanor not required by statute to be punished by confinement in a penitentiary) instituted a year and a day after the offense was committed. This can only mean dismissal with prejudice. We point out that when the General Assembly intended a dismissal under the Intrastate Detainer Act to be without prejudice, it said so specifically. See Code (1957, 1976 Repl.Vol., 1979 Cum.Supp.) Art. 27, § 616S(e).

We are told of many problems that may be created if we hold this provision to be mandatory. *We do not deny that*

*such might be the case, but the General Assembly is in session and it no doubt will take prompt corrective action if it does not mean the sections to be mandatory.* It is our duty to interpret the statute in accordance with the established law of this State.

*Id.* at 713–14, 410 A.2d at 591–92 (emphasis added).

After our decision in *In re James S.* was filed on January 29, 1980, the legislature immediately took up the issue and amended section 3–812(b). Chapter 34 of the Laws of Maryland of 1980 (House Bill 640) and Chapter 304 of the Laws of Maryland of 1980 (Senate Bill 318) both provided for essentially the same language in respect to amending section 3–812(b). It was stated in the title of House Bill 640 that the amendment was, "[for] the purpose of altering the time within which a petition alleging juvenile delinquency shall be prepared and filed by a State's Attorney. . . ." Similarly, the title of Senate Bill 318 stated that the amendment was "[for] the purpose of increasing the time period within which the State's attorney is to file a petition alleging delinquency of a juvenile." Both bills amended section 3–812(b); in its new form, it read:

(b) Petitions alleging delinquency or violation of Section 3–831 shall be prepared and filed by the State's attorney. A petition alleging delinquency shall be filed within *30 days* after the receipt of a referral from the intake officer. All other petitions shall be prepared and filed by the intake officer. [Emphasis added.]

The bills were passed to provide the State's Attorneys with an additional fifteen days to file delinquency petitions. The General Assembly did not pass the bills to change the mandatory nature of section 3–812(b) or it would have stated that it was not its intent for the section to be mandatory, as this Court in *In re James S.* had clearly invited the Legislature to do if that were the Legislature's intent.

House Bill 640 and Senate Bill 318 faced opposition even to the proposal to extend the time for the State's Attorney to file a delinquency petition from fifteen to thirty days. In the file for House Bill 640, there is a letter from Mrs. Betty McShel-

ley, Chairwoman of the Montgomery County Juvenile Court Committee. The letter, addressed to the House Judiciary Committee stated that:

> I am writing on behalf of the Montgomery County Juvenile Court Committee *in opposition* to HB 640—Juvenile Causes—Petitions.
>
> It is the feeling of the Committee that 15 days is enough time for the State's Attorney to file a delinquency petition. The additional 25 days [6] will only serve to delay the judicial process that has already been criticized as being too slow.
>
> The problem would seem to be more appropriately solved by having more [S]tate's [A]ttorneys on staff for the jurisdiction[s] that are having difficulties in meeting the time limit.

In notes from a meeting of the House Judiciary Committee, James F. Lynch from the Administrative Office of the Courts expressed the view of the Maryland Judicial Conference as not being opposed to extending the limit to thirty days, but the Judicial Conference was opposed to extending the period to forty days *and requested that the requirement remain mandatory.* Marion Mattingly, from Juvenile Justice expressed that problems in complying with the fifteen-day requirement were isolated to Baltimore City and Anne Arundel County. She thought the fifteen-day limit could be complied with if the priorities of the State's Attorney's office were adjusted to accommodate the fifteen-day requirement.

In the file for Senate Bill 318, a letter from Sally Michel, Chairperson of the State Advisory Committee to the Executive Department's Office for Children and Youth, addressed to the Honorable Joseph Owens, Chairman of the Judiciary Committee, stated that:

> The State Advisory Committee to the Office for Children and Youth opposes SB 318, Juvenile Causes—Delinquency Petition, which extends the time period within which the

---

**6.** House Bill 640 originally considered extending the time for the State's Attorney to file a petition from fifteen days to forty days.

State's attorney is to file a petition alleging delinquency of a juvenile.

We firmly believe that the current law provides adequate time for the State's [A]ttorney to file a petition alleging delinquency after reviewing the intake officer's denial of such petition. The child and the public are best served when action is taken in an expeditious and reasonable manner. Extending the time period would only cause a further delay in the court process if a petition were to be filed.

The Department of Health and Mental Hygiene made a legislative comment that stated:

The Department of Health and Mental Hygiene supports the extension of the filing of a delinquency petition because of the practicality of the State's Attorney's being able to file the petition within 15 days. However, unlike the adult system, the juvenile is served best in the most expeditious process of court action. Therefore, whenever possible, the petition should be filed within 15 days of the receipt of the complainant's appeal.

Peter S. Smith, Director of the Maryland Juvenile Law Clinic, testified before the Judicial Proceedings Committee. While opposing an extension of the time for the State's Attorney to file a delinquency petition, Mr. Smith stated that he would not be opposed to Saturdays, Sundays, and legal holidays not being included in computing the fifteen days.

Later, Chapter 707 of the Laws of Maryland of 1989 (House Bill 924), added further amendment, by modifying section 3–812(b). The purpose of the amendment was stated in its title as:

FOR the purpose of authorizing the extension of the time the State's Attorney has to file a petition alleging that a child is delinquent; making a stylistic change; and relating generally to the filing of delinquency petitions under the laws relating to juvenile causes.

The amended 3–812(b) read:

(b) Petitions alleging delinquency or violation of § 3–831 shall be prepared and filed by the State's Attorney. A

petition alleging delinquency shall be filed within 30 days after the receipt of a referral from the intake officer, *unless that time is extended by the court for good cause shown.* All other petitions shall be prepared and filed by the intake officer. [Emphasis added.]

The Senate Judicial Proceedings Committee provided a bill analysis of House Bill 924 that stated:

SUMMARY OF BILL:

This bill authorizes a juvenile court, *for good cause shown,* to extend the 30–day period during which the State's Attorney is required to prepare and file a petition alleging delinquency.

. . . .

BACKGROUND:

Under current law, a petition must allege that a child is a delinquent, in need of assistance, or in need of supervision.

If the petition alleges delinquency or alleges that an adult willfully contributed to a child's delinquency, need of supervision, or need of assistance, the State's Attorney must prepare and file the petition within 30 days after receipt of a referral from the intake officer. All other petitions are prepared and filed by the intake officer.

By allowing the court to extend the State's Attorney's deadline for preparing and filing a delinquency petition, the bill allows these petitions to be brought even if circumstances prevent the State's Attorney from completing the petition within 30 days. [Emphasis added.]

We note that even though the General Assembly has provided the State's Attorney with the power to request an extension of time for good cause, the General Assembly did not change the mandatory nature of section 3–812(b).

■ In analyzing the holding of *In re James S.,* discussed *supra,* and its application to amended section 3–812(b), and in considering that the Legislature has not seen fit to change the mandatory nature of the statute as expressed by us in *In re James S.,* despite the invitation and opportunity to do so, we

are, in this case, especially cognizant of the doctrine of *stare decisis. Boblitz v. Boblitz,* 296 Md. 242, 273, 462 A.2d 506, 521 (1983) ("We are mindful of the value of the doctrine of *stare decisis* and aware that for reasons of certainty and stability, changes in decisional doctrine ordinarily should be left to the Legislature."), citing *Harrison v. Montgomery County,* 295 Md. 442, 456 A.2d 894 (1983); *Deems v. Western Maryland Railway Co.,* 247 Md. 95, 102, 231 A.2d 514, 518 (1967) ("A decision of a state appellate court remains the law unless and until it is overruled, not only because, on re-examination, it is generally believed to be correct by the court which made it, but because of the doctrine of *stare decisis.* However, *stare decisis* is a policy rather than a presumption. Under that policy, for reasons of certainty and stability, changes in decisional doctrine are left to the Legislature."); *State, Use of Clark v. Ferling,* 220 Md. 109, 114, 151 A.2d 137, 140 (1959) ("[T]he *Cocking* [*v. Wade,* 87 Md. 529, 40 A. 104 (1898) ] case was decided some sixty years ago, and, as the legislature has not seen fit to change the ruling made therein, we think it should be followed."); *Griffith v. Benzinger,* 144 Md. 575, 597, 125 A. 512, 520 (1924) ("The doctrine of *stare decisis* is a part of our judicial system, and it rests upon the principle, that the law by which men are governed should be fixed, definite and known, and that when it is declared by a court of competent jurisdiction authorized to construe it, such declaration, in the absence of palpable mistake or error, is itself evidence of the law until it is changed by competent authority.").

 Considering our holding in *In re James S.* and the legislative amendments to section 3–812(b) since that holding, we hold that a State's Attorney must file a delinquency petition within thirty days of receiving a referral from an intake officer unless, within the thirty-day period, the State's Attorney receives an extension for good cause shown from a court. Failure to comply with the thirty day requirement must result in the petition being dismissed, with prejudice. A totality of the circumstances analysis is inappropriate and dismissal is mandatory. As we have noted, we specifically invited the Legislature to address the issue in *In re James S.,*

saying that "the General Assembly is in session and it no doubt will take prompt corrective action if it does not mean the sections to be mandatory." The General Assembly, in session at the time the decision in *In re James S.* was filed, took up the issue and passed an amendment that increased the time for the State's Attorney to file a delinquency petition from fifteen to thirty days, but it is clear that the General Assembly did not change the mandatory nature of section 3–812(b). Since that amendment, the General Assembly has amended section 3–812(b) authorizing an extension of the thirty-day period, by a court, upon a showing of good cause for the extension. The General Assembly, however, did not enact any other changes in respect to the appropriateness of dismissal as a sanction pursuant to our holding in *In re James S.* If anything, the extension for good cause amendment, confirms our earlier *In re James S.* holding.

## B. Section 5–106

Appellant's second issue is that the juvenile court erred in ruling that the statute of limitations did not apply to his juvenile offense under petition 399085025. In the juvenile court, appellant argued that petition 399085025 should be dismissed because it violated section 5–106(a) [7] and that section 5–106(b) was not applicable since they were in juvenile court and the juvenile could not be sent to a penitentiary as a disposition.[8] At the adjudicatory hearing, the juvenile court found facts to sustain a finding of second degree assault under

---

**7.** Section 5–106(a) and (b) state:

(a) *In general.*—Except as provided by this section, a prosecution for a misdemeanor shall be instituted within 1 year after the offense was committed.

(b) *Misdemeanor punishable by imprisonment in penitentiary.*—Notwithstanding § 9–103(a)(3) of the Correctional Services Article or any other provision of the Code, if a statute provides that a misdemeanor is punishable by imprisonment in the penitentiary, the State may institute a prosecution for the offense at any time.

**8.** For possible dispositions, see Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–820 of the Courts and Judicial Proceedings Article.

petition 399085025. Second degree assault [9] is a misdemeanor. The offense alleged in petition 399085025 occurred on December 3, 1997. The State's Attorney's office received the case on January 20, 1999, and after receiving a filing extension on February 3, 1999, the petition was filed on March 3, 1999. The petition was filed one year and three months after the incident occurred that generated this petition.

As stated, *supra,* the juvenile court denied appellant's motion to dismiss petition 399085025 on the grounds that section 5–106 does not apply to juvenile cases based upon the purposes of the Juvenile Causes Act. The Juvenile Causes Act, which is embodied in Title 3, Subtitle 8 of the Courts & Judicial Proceedings Article, has been examined by this court previously. In *In re Keith W.,* 310 Md. 99, 527 A.2d 35 (1987), we stated that:

> As we see it, the overriding goal of Maryland's juvenile statutory scheme is to rehabilitate and treat delinquent juveniles so that they become useful and productive members of society. As stated in part, the juvenile subtitle's purpose is "[t]o provide for the care, protection, and wholesome mental and physical development of children coming within [the subtitle's provisions]; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest." Maryland Code (1974, 1984 Repl.Vol.), § 3–802(a)(1),[10] Courts and Judicial Proceedings Article.

**9.** Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 12A states:

**§ 12A. Second degree assault.**
. . . .
(b) *Violation; penalties.*—A person who violates this section is guilty of the misdemeanor of assault in the second degree and on conviction is subject to a fine of not more than $2,500 or imprisonment for not more than 10 years or both.

**10.** This provision is currently located in Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.), section 3–802(a)(4) of the Courts and Judicial Proceedings Article, which states that:

(a) *Purposes of subtitle.*—The purposes of this subtitle are:
. . . .

The subtitle also strives to remove the taint of criminality and the consequences of criminal behavior from children who have committed delinquent acts. *Id.* § 3–802(a)(2).

*Id.* at 106, 527 A.2d at 38 (some alterations in original); *see In re Keith G.,* 325 Md. 538, 542–43, 601 A.2d 1107, 1109–10 (1992); *State v. In re Patrick A.,* 312 Md. 482, 487, 540 A.2d 810, 812 (1988).

■ While this court has held that juvenile proceedings are civil and not criminal in nature, this does not mean that a juvenile gives up all rights that a person would be entitled to in a criminal proceeding. In *In re Victor B.,* 336 Md. 85, 646 A.2d 1012 (1994), we stated that:

Although juvenile proceedings are not criminal in nature, the Supreme Court has held that many of the constitutional safeguards afforded criminal defendants are applicable to juveniles. This was aptly noted by Judge Moylan in *In re Devon T.,* 85 Md.App. 674, 584 A.2d 1287 (1991):

Under the initially prevailing philosophy that the State was acting in delinquency cases as *parens patriae* (sovereign parent of the country), the State was perceived to be not the retributive punisher of the child for its misdeeds but the paternalistic guardian of the child for its own best interests. Under such a regime, the moral responsibility or blameworthiness of the child was of no consequence. Morally responsible or not, the child was in apparent need of the State's rehabilitative intervention and the delinquency adjudication was but the avenue for such intervention.

\* \* \* \* \* \*

Over the course of the century, however, buffeted by unanticipated urban deterioration and staggering case

---

(4) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interest and the protection of the public interest. . . .

loads, the reforming vision of Judge Julian Mack and the other founders of the movement faded. Although continuing to stress rehabilitation over retribution more heavily than did the adult criminal courts, delinquency adjudications nonetheless took on, in practice if not in theory, many of the attributes of junior varsity criminal trials. The Supreme Court, in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), acknowledged this slow but inexorable transformation of the juvenile court apparatus into one with increasingly penal overtones. It ultimately guaranteed, therefore, a juvenile charged with delinquency most of the due process protections afforded an adult charged with crime.

*Id.* 85 Md.App. at 682–84, 584 A.2d at 1291.

*Id.* at 91–92, 646 A.2d at 1015 (footnote omitted); *see In re Winship*, 397 U.S. 358, 365–66, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 376 (1970) ("[C]ivil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts...."); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that a juvenile is entitled to adequate notice of charges, right to assistance of counsel, the privilege against self-incrimination, a hearing up to essentials of due process and fair treatment standards, and the right to confront and cross-examine witnesses); *see also In Interest of C.T.*, 582 S.2d 1245, 1246 (Fla.Dist.App. 4th Dist.1991) (holding that a juvenile could not be convicted of disorderly intoxication where he was charged with attempted battery on a law enforcement officer; disorderly intoxication was not lesser included offense and conviction of crime not charged violated constitutional due process as well as the constitutional right of an accused to be informed of the nature and cause of cases; and evidence which violates child's constitutional rights may not be admitted); *In Interest of Doe*, 79 Hawai'i 265, 272, 900 P.2d 1332, 1339 (Haw.App.1995) (holding that while juvenile proceedings, in which the juvenile is alleged to have committed an act which would constitute crime if juvenile were adult, are not criminal cases, they are treated in

many respects like criminal cases where necessary and appropriate and they must measure up to the essentials of due process and fair treatment; proceedings are subjected on appeal to substantial evidence standard applied to appeals from criminal convictions; rules of evidence in criminal cases are applicable; and evidence which violates child's constitutional rights may not be admitted); *State v. Smith*, 546 N.W.2d 916, 920 (Iowa 1996) (holding that juveniles in custody at time of interview by law enforcement officials are entitled to full complement of constitutional rights afforded by *Miranda*, as well as to additional state statutory and court rules setting forth procedural safeguards applicable to juvenile justice proceedings); *In the Matter of M.R.R.*, 929 S.W.2d 687, 688 (Tex.App.San Antonio 1996) (Tex.Fam.Code Ann., sec. 54.03(b), the court stated that at the beginning of an adjudication hearing, a judge must explain, among other things, the child's privilege against self-incrimination, the child's right to trial and to confront witnesses, the child's right to representation by an attorney, and the child's right to a trial by jury). The Court of Special Appeals has held that juveniles are entitled to the right to a speedy trial. *In re Thomas J.*, 132 Md.App. 396, 403, 752 A.2d 699, 702 (2000) ("Maryland, as well as other jurisdictions, have held that the Sixth Amendment right to a speedy trial is applicable to juvenile proceedings."); *Berryman v. State*, 94 Md.App. 414, 420, 617 A.2d 1120, 1123 (1993) ("[W]e conclude that the 6th Amendment right to a speedy trial is applicable to juvenile proceedings. Moreover, the right to a speedy trial is also guaranteed by Art. 21 of the Maryland Declaration of Rights.").

While we have never addressed the issue of whether the statute of limitations from criminal proceedings are applicable to juvenile proceedings, other jurisdictions have statutes that make the general statute of limitations for offenses applicable to juvenile proceedings or their courts have held that the statute of limitations for criminal offenses are applicable in juvenile proceedings. *See People In the Interest of M.T.*, 950 P.2d 669, 670–71 (Colo.App.1997) ("The court based its ruling on 19–2–104(6), C.R.S.1997, which states: 'The juvenile court

may retain jurisdiction over a juvenile until all orders have been fully complied with by such person, or any pending cases have been completed, or the statute of limitations applicable to any offense which may be charged has run, regardless of whether such person has attained the age of eighteen years, and regardless of the age of such person.' "); *State v. J.C.*, 677 S.2d 959, 960 (Fla.Dist.App. 2nd Dist.1996) ("Since appellee was never 'taken into custody' within the meaning of section 39.01(51), Florida Statutes (1993), and the delinquency petition was filed approximately seven months after the incident, well within the two-year statute of limitations for battery, we decline to hold that appellee was so prejudiced by a seven-month delay in filing to justify dismissal."); *State v. Gammon*, 519 A.2d 721, 722 (Me.1987) ("Limitations upon the commencement of prosecution against a juvenile shall be the same as those provided for adults...."); *State in the Interest of B.H.*, 112 N.J.Super. 1, 5, 270 A.2d 72, 74 (1970) ("The defense of the statute of limitations, being substantive, should be available to juveniles where the complaint alleges the commission of an adult criminal or penal offense."); *In the Matter of G.M.P.*, 909 S.W.2d 198, 204 (Tex.App.Houston 1995) ("The State may prove that the offense was committed before, on, or after the alleged date, provided the date proved is a date prior to the date of the indictment, and is within the statute of limitations.").

We have stated, *supra*, that the intent of the Juvenile Causes act is to rehabilitate and treat juvenile delinquents so that they become useful and productive members of society. Applying the statute of limitations would only seem to further this objective by making sure that juvenile actions quickly proceed to adjudication, so that if a juvenile needs rehabilitation, it will be provided in an expeditious manner. When a juvenile is in his or her formative years, it would seem that if the juvenile is a delinquent, the quicker that the juvenile can be treated and rehabilitated, the better it is for the juvenile and for society at large.

 We hold that, in juvenile proceedings, where the offense would be a misdemeanor under the purview of section 5–106(a) in an adult criminal proceeding, section 5–106(a) applies to the juvenile proceeding, unless there is some other statute providing a different period of limitations, in which event the different statute applies in juvenile proceedings. However, if the offense in the juvenile proceeding is an offense, where, in an adult criminal proceeding the specific statute provides that the misdemeanor is punishable by imprisonment in the penitentiary, then section 5–106(b) generally controls and the State may institute a prosecution for the offense at any time (provided it meets all of the provisions of the juvenile statutes, including charge filing deadlines).

As we have previously said in respect to section 5–106(b), the specific misdemeanor statute must explicitly state that the misdemeanor is punishable by imprisonment in the penitentiary in order for it to be a "penitentiary misdemeanor." We stated that "[i]t is the specific statutory authorization of imprisonment in the penitentiary (even as an alternative to other forms of punishment), and not the punishment actually imposed, which determined whether the unlimited period or the one year period of the statute should be applicable." *Massey v. State*, 320 Md. 605, 611, 579 A.2d 265, 268 (1990). To see an example of the required language, *see* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27, section 8(b)(2), which states that "[a] person who violates this subsection is guilty of a misdemeanor and on conviction is subject to imprisonment in the penitentiary...." [11] As stated, *supra,*

---

**11.** Penitentiary misdemeanors include offenses found in the following statutes:

**Article 27 Crimes and Punishments,** sections 8, 12B, 22, 23, 25, 35E, 44,46, 47, 53, 80, 126, 127, 132, 139A, 163, 173, 174, 215, 229, 265, 374, 439, 554, 558, 559, 560, 792; **Article 33 Election Code,** sections 16–101, 16–303; **Article 48 Inspections,** section 3; **Article 83A Department of Business and Economic Development,** sections 5–940, 6–112, 6–212; **Article 88A Social Services Administration,** section 62; **Family Law Article,** section 5–559.7; **Financial Institutions Article,** sections 5–804, 9–102, 9–216, 9–224, 9–307, 9–913, 9–914;

appellant contends that section 5–106(b) is not applicable since a juvenile cannot be sent to a penitentiary as a disposition. Appellant fails to realize that section 5–106(b) does not apply to the misdemeanor of second degree assault in the first instance. The statute for second degree assault does not explicitly state that second degree assault is punishable by imprisonment in the penitentiary. *See, supra,* note 9. Accordingly, section 5–106(a) applies.

By way of further explanation, we note that many, if not all, of the offenses providing for sentencing to the penitentiary are not of the most modern vintage. Subsequent to the enactment of most, if not all, of the penitentiary misdemeanor statutes, the General Assembly enacted Article 27, section 690(e),[12] which provides in relevant part: "Whenever ... reference is made to the sentencing ... of prisoners to any of the institutions enumerated in § 689 [the enumeration includes the Maryland Penitentiary], such reference shall ... be construed to mean sentencing ... to the jurisdiction of the [Division] rather than to any particular institution...." [13]

Standing by itself, such provision might be considered to have abolished "penitentiary misdemeanors." However, in subsequently enacted amendments to section 5–106, the misdemeanor limitation statute, the most recent amendment being effective January 1, 1999, the General Assembly has clearly indicated that its intent is not to abolish penitentiary misdemeanors. Section 5–106(b) specifically commences with the qualifying phrase, "Notwithstanding § 9–103(a)(3) of the Correctional Services Article or any other provision of the Code...." Therefore, section 5–106(b) provides that *only* in respect to those offenses that constitute "penitentiary misdemeanors," *i.e.,* where a specific statute provides that misde-

Health Occupations Article, **section 4–606;** Natural Resources Article, **section 3–2A–12;** State Finance and Procurement, **section 7–237.**

**12.** This section moved to Article 27, section 690(e), prior to our holding in *Massey v. State,* and is presently located in Maryland Code (1999), section 9–103(a)(3) of the Correctional Services Article.

**13.** *See Massey, supra,* for an extensive history of section 690(e).

meanors may be punishable by incarceration in the penitentiary, is there no statute of limitations. All other misdemeanors are governed by other statutes, generally by section 5–106(a), which provides that prosecution of all such misdemeanors must commence within one year of the date of the commission of the offense.

At the time we decided *Massey v. State*, the limitation statute that existed provided in section 5–106(a), that "Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year...." In *Massey*, 320 Md. at 621, 579 A.2d at 272–73, we held, in construing the effect of Article 27, section 690(e), that

"[t]he former reference to the 'penitentiary' is not simply unamended language which has become obsolete for sentencing purposes. Rather, the word "penitentiary" had been amended out of the statute."

Earlier in our discussion in *Massey*, 320 Md. at 620, 579 A.2d at 272, we stated, concerning the provision then in section 5–106(a) excepting penitentiary misdemeanors from the one-year limitation provision, that

"If the Legislature today were to provide that, notwithstanding Art. 27, § 690, a particular offense should be punished by confinement in the penitentiary, the exception in section 5–106(a) would be fully operative with regard to that offense."

Apparently, the Legislature did just what we discussed, even using our language, by enacting Chapter 371 of the Laws of Maryland of 1991 (House Bill 396). Its title clause provided:

FOR the purpose of ... *establishing that notwithstanding Article 27, § 690(e) of the Code or the decision of the Court in Massey v. State, 320 Md. 605, 579 A.2d 265 (1990), if a statute provides that a misdemeanor is punishable by imprisonment in the penitentiary, the State may institute a prosecution for the offense at any time;* ... and generally relating to penitentiary misdemeanors.

It then took the penitentiary misdemeanor exception out of section 5–106(a) and put it in a separate section 5–106(b), in its present form, including the "notwithstanding" language we had mentioned in *Massey v. State.*

It is clear that the Legislature intended to maintain a distinction between penitentiary misdemeanors, and other misdemeanors, and, moreover, intended that there be no statute of limitations in respect to penitentiary misdemeanors, and a general one-year statute of limitations for all other misdemeanors, except to the extent that other parts of section 5–106 or other statutes may provide a different limitations period in respect to a specific offense.[14] In this case, petition 399085025 brought charges against appellant based on second degree assault which is a misdemeanor punishable in an adult criminal proceeding by a fine of not more than $2,500 or imprisonment for not more than ten years or both. But, as we have indicated, the statute, in respect to second degree assault, does not provide for a sentence in the penitentiary. Accordingly, the general one-year statute of limitations for misdemeanors applies.

## CONCLUSION

The findings of the trial court in proceeding 399021021 are vacated. The proceeding is remanded to the trial court with instructions to dismiss the proceeding for failure of the State to file charges within thirty days of receipt of the referral.

In proceeding 399085025, we hold that the statute of limitations applicable to adult criminal misdemeanor offenses is likewise applicable to juvenile offenses in delinquency actions. It is to be applied in respect to the nature of the misdemeanor offense, not the age of the alleged offender. In other words, statutes of limitation applicable to criminal offenses, including

14. Other parts of section 5–106 provide for limitation periods for specific offenses. For example, paragraph (*o*) provides that the "statute of limitations for the crime of conspiracy is the statute of limitations for the prosecution of the substantive crime that is the subject of conspiracy."

section 5–106 shall apply in juvenile causes. Generally, section 5–106(a) applies to offenses for which a statute does not provide for incarceration in a penitentiary, and, generally, section 5–106(b) shall apply, even in juvenile causes, to acts, which, if committed by an adult, fall under a statute stating that the misdemeanor is punishable by imprisonment in the penitentiary.

The findings of the trial court in proceeding 399085025 are vacated. The proceeding is remanded to the trial court with instructions to dismiss the proceeding for failure of the State to bring prosecution within one year after the offense was committed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE TO BE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION AND OUR CONCLUSION; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**