887 A.2d 1042

**MOTOR VEHICLE ADMINISTRATION**

v.

**Steven W. WELLER.**

**No. 20, Sept. Term, 2005.**

Court of Appeals of Maryland.

Dec. 12, 2005.

116

118

Robert C. Cain, II, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Glen Burnie, for petitioner.

Samantha Z. Smith (Hickman, Ulsch, McFaul, Smith & Wright, P.A., Westminster), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case arises out of an Administrative Law Judge's decision, made on behalf of the Motor Vehicle Administration, resulting in the one-year suspension of the Maryland driving privileges of Steven W. Weller, respondent, following a driving incident where respondent refused to submit to a chemical breath test. On May 16, 2004, a police officer stopped the car respondent was driving after seeing the car cross over a set of double yellow lines on the road. Respondent failed the field

sobriety tests administered by the police officer and refused to take a chemical breath test to determine the amount of his alcohol consumption. Respondent was issued an Order of Suspension, pursuant to Md.Code (1977, 2002 Repl.Vol., 2005 Supp.), § 16–205.1 of the Transportation Article,[1] for refusing to take the chemical breath test.

Respondent contested this suspension at an administrative show cause hearing conducted by an Administrative Law Judge (ALJ) of the Maryland Office of Administrative Hearings (OAH). The Motor Vehicle Administration (hereinafter, the "Administration" or "Agency"), petitioner, had delegated final administrative decision-making authority in such cases to the OAH, subject to § 16–205.1. Following the hearing, the ALJ found that respondent had violated § 16–205.1 and suspended respondent's Maryland driving privileges for one year. Respondent sought judicial review of the Agency's decision in the Circuit Court for Carroll County. The Circuit Court reversed the Agency's decision and vacated the one-year suspension of respondent's driving privileges.

The Administration then filed a Petition for Writ of Certiorari to this Court and on June 9, 2005, this Court granted certiorari. *Motor Vehicle Administration v. Weller,* 387 Md.

---

1. Section 16–205.1 is an extremely lengthy statute, thus, at this point, we only include the text specifically relevant to our inquiry in the case *sub judice.* The relevant text of § 16–205.1(b)(1) states:

"(b) *No compulsion to take chemical test; consequences of refusal.—* (1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

　　(i) In the case of a person licensed under this title:

　　　　. . .

　　2. For a test refusal:

　　A. For a first offense, suspend the driver's license for 120 days; or

　　B. For a second or subsequent offense, suspend the driver's license for 1 year; . . . ."

Hereinafter, unless noted otherwise, all statutory references are to this Article of the Maryland Code.

462, 875 A.2d 767 (2005). In its brief, the Administration presents two questions for our review:

1. "Did the circuit court erroneously rule that preliminary breath test results are inadmissible in an administrative hearing under Transportation Article § 16–205.1, when Transportation Article § 16–205.2 [2] prohibits their use as evidence only in a 'court action' or 'civil action'?"

2. "Did the circuit court improperly substitute its judgment for that of the agency when it reversed and vacated the agency's decision because it found the ALJ did not properly consider Weller's employment as an insurance adjuster and the fact that it had been eight years since his prior test refusal?"

We answer the Administration's questions in the affirmative and reverse the judgment of the Circuit Court for Carroll

---

**2.** Section 16–205.2 of the Transportation Article states:

"**16–205.2. Preliminary breath test.**

(a) *Request by police officer.*—A police officer who has reasonable grounds to believe that an individual is or has been driving or attempt-' ing to drive a motor vehicle while under the influence of alcohol or while impaired by alcohol may, without making an arrest and prior to the issuance of a citation, request the individual to submit to a preliminary breath test to be administered by the officer using a device approved by the State Toxicologist.

(b) *Advice to person to be tested.*—The police officer requesting the preliminary breath test shall advise the person to be tested that neither a refusal to take the test nor the taking of the test shall prevent or require a subsequent chemical test pursuant to § 16–205.1 of this article.

(c) *Use of results of test.*—The results of the preliminary breath test shall be used as a guide for the police officer in deciding whether an arrest should be made and may not be used as evidence by the State in any court action. The results of the preliminary breath test may be used as evidence by a defendant in a court action. The taking of or refusal to submit to a preliminary breath test is not admissible in evidence in any court action. Any evidence pertaining to a preliminary breath test may not be used in a civil action.

(d) *Refusal to take test not violation of § 16–205.1; test under § 16–205.1 not affected.*—Refusal to submit to a preliminary breath test shall not constitute a violation of § 16–205.1 of this article and the taking of a preliminary breath test shall not relieve the individual of the obligation to take the test required under § 16–205.1 of this article if requested to do so by the police officer."

County. Addressing the first question, we hold that the trial court erred in considering the issue of the admissibility of the preliminary breath test result before the agency. No objection to its admissibility was made, accordingly that issue was not preserved. We shall discuss this matter further, *infra.*

## I. Facts

The evidence before the ALJ reflected that early on the morning of May 16, 2004, Officer Jeffrey Shuster of the Hampstead Police observed a white Chevrolet, driven by respondent, cross over a set of double yellow lines. Officer Shuster stopped the vehicle and identified the driver from his Maryland license as Steven W. Weller, the respondent.

Upon speaking with the respondent, Officer Shuster detected a strong odor of an alcoholic beverage coming from respondent's breath. The officer also observed that respondent had bloodshot and watery eyes. During the stop, respondent admitted to the officer that he had consumed six beers. The officer conducted field sobriety tests and noted that respondent performed poorly on, and thus failed, the field sobriety tests administered during the stop. When the officer gave respondent a PBT, the result suggested he had a blood alcohol concentration of 0.16.

As a result of this information, the officer arrested the respondent for driving under the influence of alcohol pursuant to § 21–902 of the Transportation Article. The officer then requested that the respondent submit to the chemical breath test authorized under § 16–205.1 [3] to determine his blood alcohol concentration. Prior to the respondent's decision, the officer advised him of the administrative sanctions that he would face if he refused to take the breath test for a first or subsequent time. Respondent refused to take the test and

---

**3.** Section 16–205.1(a)(1)(iv), in pertinent part, provides:

"(iv) 'Test' means, unless the context requires otherwise:

1. A test of a person's breath or of 1 specimen of a person's blood to determine alcohol concentration; . . . ."

acknowledged his refusal in writing by signing a DR–15 ("Advice of Rights") form.[4]

4. The form reads as follows:

"**ADVICE OF RIGHTS**—(§ 16–205.1 of the Maryland Vehicle Law) You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle while under the influence of alcohol; impaired by alcohol; so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol; or impaired by a controlled dangerous substance that you could not drive a vehicle safely; in violation of an Alcohol Restriction, or in violation of § 16–813 of Maryland Transportation Article.

In this state, any person who drives or attempts to drive a motor vehicle, including a commercial motor vehicle, on a highway or on any private property that is used by the public in general, is deemed to have consented to take a test to determine the alcohol concentration, or test to determine the drug or controlled dangerous substance content of the person. The test shall be at no cost to you. The test to determine alcohol concentration shall be a breath test. However, a test of blood shall be administered if the breath test equipment is unavailable. A test is required to determine the drug or controlled dangerous substance content, or if your injuries require medical treatment. The results of such test or tests, or a refusal of any such test, may be admissible as evidence in any criminal prosecution.

● **Mandatory Test:**
If you are involved in a motor vehicle accident resulting in the death of, or life threatening injuries to, another person, you must take a test.

● **Submission to the test. If your test results in an alcohol concentration of 0.08 or more:**
The MVA will be notified of your test results; your Maryland driver's license shall be confiscated; an Order of Suspension issued; and if eligible, a temporary license issued valid for 45 days. An Administrative suspension shall be imposed by the MVA against your Maryland driver's license or privilege. The suspension shall be 45 days for a first offense and 90 days for a second or subsequent offense. Modification of the suspension may occur in certain circumstances.

● **You have the right to refuse to submit to the test. If you refuse:**
The Motor Vehicle Administration (MVA) will be notified of your test refusal; your Maryland (MD) driver's license shall be confiscated; an Order of Suspension issued, and if eligible, a temporary license issued, valid for 45 days. The MVA shall suspend your MD driver's license or driving privilege if you are a non-resident. The suspension shall be 120 days for a first offense and 1 year for a second or subsequent offense. You will be ineligible for a modification of the suspension or issuance of a restrictive license, except in certain circumstances, a test refusal suspension may be modified at a hearing if you agree to participate in the Ignition Interlock Program for at least 1 year.

● **Administrative Hearing:**

You may request an Administrative Hearing, at any time within 30 days of the date of the Order of Suspension, to show cause why your driver's license or privilege should not be suspended. You may request a hearing within 10 days of the date of the Order of Suspension to insure that your privilege to drive is not suspended prior to your hearing. Your request for a hearing must be made in writing. You may use the 'Hearing Request' form if available. Send your request to the Office of Administrative Hearings at 11101 Gilroy Rd., Hunt Valley, MD 21031–1301. You must include a check or Money Order for $15.00, which is the required filing fee, made payable to the 'Maryland State Treasurer.' Your request for a hearing will be invalid if submitted without the required $15.00 filing fee.

- **Violation of Restriction:** The MVA may also suspend or revoke your license upon satisfactory evidence of a violation of an alcohol restriction.
- **Disqualification of CDL:** In addition to any suspension for a test failure or refusal, your Commercial Driver's License (CDL) may be disqualified. If you were operating a commercial motor vehicle and you refuse to submit to a test, or your test result indicates an alcohol concentration of 0.04 or more, your CDL or privilege will be disqualified for 1 year for a first offense; 3 years for a first offense while transporting hazardous materials required to be placarded; and lifetime for a second or subsequent offense.
- **Your driver's license or privilege will be suspended on the 46th day after the date of the Order of Suspension if:**

(1) You do not request a hearing with 10 days of the date of the Order of Suspension; (2) You fail to appear for a hearing; (3) At the conclusion of the hearing, a decision is rendered against you. Your request for a hearing will be invalid if submitted without the required $15.00 filing fee.

- **Certification:**

I, the undersigned police officer, certify that I have advised the driver of the above stated Advice of Rights. This included advising the driver of the sanction to be imposed for: (1) A refusal to take a test; (2) A test resulting in an alcohol concentration of 0.08 or more, and (3) Advising of sanction for a test refusal or a test resulting in an alcohol concentration of 0.04 or more while operating a commercial motor vehicle.

**Read Before Signing:**

I, the undersigned driver, acknowledge that I have been read or have read the above stated Advise of Rights as certified by the police officer. I understand that this requested test is in addition to any preliminary tests that were taken.

Having been so advised, do you now agree to submit to a test? (This is not an admission of guilt.)

(Officer check reply)

☐ Yes-Agree to submit to an alcohol concentration test

☐ Yes-Agree to submit to a test for drug or controlled dangerous substance (CDS)

☐ No-Alcohol concentration test refused

☐ No-Drug or CDS test refused (DRE must complete & submit DRE Certification Form)

Driver Signature _____ Date _____ Time _____ DR-15A Control # _____

Respondent contested this suspension at an administrative show cause hearing conducted by an Administrative Law Judge (ALJ). Pursuant to § 16–205.1 of the Transportation Article, Officer Shuster then issued respondent an Order of Suspension.

Pursuant to his rights under § 16–205.1(b)(3)(v)(1),[5] respondent requested an administrative "hearing to show cause why [respondent's] driver's license should not be suspended concerning the refusal to take the [chemical breath] test." On June 28, 2004, a hearing was conducted in front of an ALJ at the Office of Administrative Hearings. Respondent eight years earlier had refused such a test and was therefore facing a possible one-year suspension pursuant to § 16–205.1(b)(1)(i)(2)(B). The Administration presented several documents at the hearing which were admitted into evidence by the ALJ, including a DR–15A "Officer Certification and Order of Suspension" and the respondent-signed DR–15 "Advice of Rights" form acknowledging respondent's refusal to take the chemical breath test. *Respondent did not object to the introduction into evidence of any of the Administration's documents, including the DR–15 officer certification that contained the respondent's PBT result.*

Respondent testified that he was single and lived alone. Respondent also testified that he was employed by an insurance company as a material damage adjuster and had worked

Signature of Officer _____ I.D. No. _____ Police Agency _____
 DR-15 (07/01)"

**5.** Section 16–205.1(b)(3)(v)(1), in relevant part, states:

"(3) If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of testing, the police officer shall:

. . .

(v) Inform the person that:
1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days; . . . . "

in the insurance adjustment business for twenty-three years. His job consisted of inspecting vehicles for collision damage and, thus, required him to spend a large amount of his time on the road, driving to and from inspections. Respondent testified that he was provided with a company car for these purposes, but that he had a private vehicle that he used for non-work related driving. Finally, respondent testified that he had inquired of his employer about the possibility of an ignition interlock being installed in the company car and was told that it was not possible because it was a leased vehicle.

At the conclusion of the hearing, respondent asked the ALJ to exercise her discretion and not suspend his driver's license for the full one-year period mandated by § 16–205.1(b)(1)(i)(2)(B) for repeat offenders. Respondent asked that the ALJ grant him the opportunity to use his company vehicle without restriction, because the ignition interlock could not be installed on that vehicle, and that he be allowed to use his personal vehicle with an ignition interlock.

The ALJ rejected respondent's proposed disposition and held as follows:

"I've considered the evidence and testimony presented in the case, and I find by a preponderance of the evidence that the officer who stopped [respondent] had reasonable grounds to believe that he was driving a motor vehicle while under the influence of or impaired by alcohol because on May [16], 2004, [respondent] was observed driving across [a] double yellow line. The officer noted a strong odor of alcohol. A preliminary breath test of .16. Licensee said he had six beers. Blood shot and watery eyes. The officer fully advised [respondent] of the administrative sanctions, asked that he take a breath test, and he refused the test, and [that refusal] is a violation of Section 16–205.1. The record indicates that there was a prior refusal on July 12, 1996, followed by a 120–day suspension. Therefore, this is a second offense with a possible one-year suspension. In deciding what to do, I consider a number of different factors. I have considered the prior refusal, which put [respondent] in—resulted in some alcohol treatment. I've

considered that he's employed as an insurance adjuster (INAUDIBLE). He was evaluated by Westminster Recovery Center on June 25, 2004, (INAUDIBLE) 26 weeks of alcohol treatment. There are a number of extremely serious problems in [respondent's] case. I have considered the request for the interlock device but the problems are this. The driving was dangerous. [May] 16, 2004, it indicates that he drove across a double yellow line (INAUDIBLE). The level of alcohol as indicated by the evidence, and you can consider preliminary breath test result[s] in administrative proceedings, was .16, double the legal limit. Also, according to the Officer's Certification [respondent] told the officer he had six beers. This is after a prior alcohol offense that resulted in a suspension and alcohol treatment. [Respondent] has recently been evaluated by Westminster Recovery Center. I have reviewed the report, which is fairly detailed. This program—the program representative indicates that he believes that [respondent] was honest in all the information he gave me but this report doesn't indicate a prior alcohol offense or prior alcohol treatment. It is of concern to me that (INAUDIBLE) [respondent] may not have been completely honest with (INAUDIBLE). My decision in weighing all these different factors is that I am going to suspend your license for one year."

The Administration then suspended respondent's privilege to drive in Maryland for one-year as provided for in § 16–205.1(b)(1)(i)(2)(B).

Respondent sought judicial review of the Administration's decision in the Circuit Court for Carroll County and that court held a hearing on January 14, 2005. On February 16, 2005, the Circuit Court issued an Order reversing the decision of the Administration and vacating the one-year suspension of respondent's Maryland driving privileges. The Circuit Court held that the Administration via the ALJ:

"did not give proper consideration to [respondent's] employment as an insurance adjuster for the past twenty-three years, to the fact that his prior alcohol offense was eight years ago, or that ignition interlock was an available option

on his personal vehicle. What is most significant, however, is that the Administrative Law Judge considered the result of [respondent's] preliminary breath test which is prohibited under MD. Transp. Code Ann. § 16.205.2(c) . . .

. . .

"Therefore, after a thorough review of the record in this matter, the [Circuit] Court finds that the decision of the Administrative Law Judge is not supported by competent, material and substantial evidence and is, therefore, arbitrary and capricious."

## II. Consideration of unpreserved issues.

As a preliminary issue, we first address the Administration's argument in its brief that respondent's failure to object to the introduction of his preliminary breath test result at the administrative hearing constitutes a waiver of his right to argue the admissibility of the evidence. *See Cicala v. Disability Rev. Bd. for Prince George's Co.,* 288 Md. 254, 263, 418 A.2d 205, 210–11 (1980).

We stated in *Cicala:* "Because the issue of the alleged error was not raised during the administrative proceeding, it was not properly raised in the judicial review proceeding, and therefore is not properly before us." *Id.* at 263, 418 A.2d at 210–11. We declined to address that issue. More recently, Judge Raker, writing for the Court, opined in *Schwartz v. Maryland Department of Natural Resources,* 385 Md. 534, 554–56, 870 A.2d 168, 180–81 (2005):

"The difficult problem presented in the case *sub judice* is that the Circuit Court for Queen Anne's County ruled on an issue that was never raised before the agency. . . .

. . .

"Because, even if the exemption exists, we agree with the agency decision that appellants are not entitled to the exemption as a matter of fact, we will not in this case decide

whether the Circuit Court was correct in its construction of the statute." (Footnote omitted.)

In our decision in *Schwartz,* although we declined to reach the exemption issue, we, in a footnote as dicta made a brief comment:

"This case should provide fair notice to the Department of Natural Resources, boat dealers, boat builders, and potential boat purchasers that the exemption at issue may not exist under the statute. Inasmuch as the Circuit Court ... may well have been correct in its interpretation, DNR might consider proposing to the Legislature language clarifying or amending the statute to provide explicitly for that which is reflected in Form 110B."

*Id.* at 556 n. 4, 870 A.2d at 181 n. 4.

Prior to our *Schwartz* case there was a recent line of our cases that consistently held that if issues were not raised during the administrative proceeding they could not later be raised during judicial review. In *Delmarva Power & Light Company v. Public Service Commission,* 370 Md. 1, 32, 803 A.2d 460, 478 (2002), Judge Wilner for the Court, stated:

"The cases in which a waiver has been found based on non-preservation have been in the nature of contested cases, as to which judicial review ... is limited. As we noted in *Bulluck [v. Pelham Wood Apartments],* 283 Md. [505] at 518–19, 390 A.2d [1119] at 1127 [ (1978) ], quoting from *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946), '[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.' We do not allow issues to be raised for the first time in actions for judicial review of administrative agency orders entered in contested cases because to do so would allow the court to resolve matters *ab initio* that have been committed to the jurisdiction and expertise of the agency."

In *Brodie v. Motor Vehicle Administration*, 367 Md. 1, 3–4, 785 A.2d 747, 748–49 (2001), with Judge Eldridge writing, the Court stated:

"Brodie filed in this Court a petition for a writ of certiorari which presented the single question of whether the MVA was authorized to revoke a driver's license when 'the petitioner's license and privilege to drive were already revoked.' . . . Believing that this was an important legal issue . . . , we granted the petition. We shall not, however, be able to reach the issue.

. . .

"Since Brodie's entire challenge to the administrative decision was based on an issue not raised before the agency, the Circuit Court should have affirmed the administrative decision without reaching the issue." (Citations omitted.)

Judge Harrell noted an exception to the general rule as to preservation issues in respect to judicial review of administrative agency actions in *Engineering Management Services, Inc. v. Maryland State Highway Administration*, 375 Md. 211, 235, 825 A.2d 966, 980 (2003), when he stated for the Court:

"The SHA argues, and the Court of Special Appeals agreed, that the issue of the MSBCA's failure to promulgate rules was not preserved for review as EMS failed to raise the issue during the proceedings before the MSBCA. Judicial review of administrative decisions generally is limited to the issues raised before the agency. We reach this issue, however, not because EMS raised it on appeal, but rather because it is an integral, and thus unavoidable, component of our determination of the properly raised issue of whether the MSBCA's grant of summary disposition was appropriate in this case." (Citations omitted.)

■ Because of the nature of the Circuit Court's opinion in this case, where he did not separate the issues he was addressing, a resolution of the un-preserved issue by this Court is necessary.

## Analysis

The Circuit Court, in respect to the second issue presented by the Petitioner, opined:

"It was apparent from the transcript of the June 28, 2004, hearing that the ALJ did not give proper consideration to Petitioner's employment as an insurance adjuster for the past twenty-three years, to the fact that his prior alcohol offense was eight years ago, or that ignition interlock was an available option on his personal vehicle. What is most significant, however, is that the Administrative Law Judge considered the result of Petitioner's preliminary breath test which is prohibited. . . .

"Therefore, after a thorough review of the record in this matter, the Court finds that the decision of the Administrative Law Judge is not supported by competent, material and substantial evidence and is, therefore, arbitrary and capricious."

Part of the evidence before the Administrative Law Judge and before the Circuit Court was the results of the preliminary breath test. While normally we do not, and circuit courts should not, consider issues not preserved, in this case the Circuit Court specifically based its opinion on the lack of substantial evidence only after specifically ruling that some of the material evidence presented should not have been admitted before the agency. At the least, it is difficult to separate the ruling of the trial judge, from its subsequent finding that the evidence was not sufficiently substantial. Under these particular circumstances, especially the language of the Circuit Court's opinion, it appears that the evidentiary issue was integral to the trial court's ruling, and, thus, it may be a necessary component integral to our holding arising out of that particular opinion. We shall thus address that ruling. It was wrong.

We additionally note that addressing this issue does not work to the disadvantage of the party raising the issue before us, as the decision of the Circuit Court will be reversed and the determination by the agency upheld. Neither does it

prejudice the Respondent in that he was not entitled to raise the issue in the first instance before the Circuit Court.

## III. Discussion

As we previously stated in *Motor Vehicle Administration v. Jones*, 380 Md. 164, 172–73, 844 A.2d 388, 393 (2004):

"Section 16–205.1 of the Transportation Article, commonly known as Maryland's Implied Consent Law, provides the statutory structure for the suspension of a suspected drunk motorist's driving privileges where that driver refuses to submit to a chemical breath test for intoxication.[6] Section 16–205.1(a)(2) states:

'(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.'

Pursuant to § 16–205.1(b)(1) of the Transportation Article, an officer detaining a suspected drunk driver must advise the suspect of certain rights enumerated in that subsection and may not compel that suspect to take a chemical breath test. Section 16–205.1(b) further discusses the exact procedures an officer must follow if the officer has reasonable grounds to suspect the driver is under the influence of alcohol or drugs, including detaining the suspect, requesting

---

6. Footnote 5 in *Jones* states: "The type of test to be administered is governed by Md.Code (1973, 1998 Repl.Vol., 2003 Supp.), § 10–305 of the Courts and Judicial Proceedings Article."

a chemical breath and/or blood test and advising the suspect of administrative sanctions for refusal to take a requested test. If, as occurred in the case *sub judice*, the suspect refuses to take the chemical breath test after being properly advised, § 16–205.1(b)(3) directs the officer to confiscate the suspect's driver's license, serve an order of suspension, issue a temporary license and inform the suspect of the suspect's right to a hearing and of the possible administrative sanctions." (Footnote omitted.)

Section 16–205.2 of the Transportation Article, titled "Preliminary breath test," governs when a PBT can be administered and, as applicable to the case *sub judice*, how the results of a PBT are to be used. Section 16–205.2(c) is particularly relevant, providing:

"(c) *Use of results of test.—The results of the preliminary breath test shall be used as a guide for the police officer in deciding whether an arrest should be made and may not be used as evidence by the State in any court action. The results of the preliminary breath test may be used as evidence by a defendant in a court action. The taking of or refusal to submit to a preliminary breath test is not admissible in evidence in any court action. Any evidence pertaining to a preliminary breath test may not be used in a civil action.*" (Emphasis added.)

The first issue in the case *sub judice* is whether a PBT is admissible in an administrative hearing in light of the restriction contained in § 16–205.2(c).

### A. An Administrative Hearing is Neither a "Court Action" Nor a "Civil Action."

The central question is whether an administrative hearing is a "court action" or a "civil action." The Circuit Court found that § 16–205.2(c) applied to the administrative hearing and, therefore, the ALJ should not have considered the results of the respondent's PBT. This was an erroneous interpretation of § 16–205.2(c).

■■■ We look to the well-settled canons of statutory interpretation in aid of reaching our holding. As we stated in *Jones*, 380 Md. at 175, 844 A.2d at 394–95:

"It has long been settled by this Court that 'the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.' *Holbrook v. State*, 364 Md. 354, 364, 772 A.2d 1240, 1245–46 (2001) (quoting *In re Anthony R.*, 362 Md. 51, 57, 763 A.2d 136, 139 (2000) (internal citation omitted)). First and foremost, a court should thoroughly examine the plain language of the statute when attempting to ascertain the Legislature's intentions. *Holbrook*, 364 Md. at 364, 772 A.2d at 1246; *In re Anthony R.*, 362 Md. at 57, 763 A.2d at 139. If the statutory language in question is unambiguous when construed according to its ordinary and everyday meaning, then this Court 'will give effect to the statute as it is written.' *Pak v. Hoang*, 378 Md. 315, 323, 835 A.2d 1185, 1189 (2003) (quoting *Moore v. Miley*, 372 Md. 663, 677, 814 A.2d 557, 566 (2003) (internal citation omitted)). This Court, however, will not add or delete words from the statute. *Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426, 427 (2002). We will look 'beyond the statute's plain language in discerning the legislative intent' only where the statutory language is ambiguous. *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 483, 833 A.2d 1014, 1021 (2003)."

The Administration argues that the plain language of § 16–205.2(c) is clear and does not prohibit a PBT from being admitted into evidence at a § 16–205.1 administrative hearing. Section 16–205.2(c) only prohibits a PBT from being admitted into evidence in three instances: (1) "[t]he results of the [PBT] . . . may not be used as evidence by the State in any *court action*," (2) "[t]he taking of or refusal to submit to a[PBT] is not admissible in evidence in any *court action*," and (3) "[a]ny evidence pertaining to a preliminary breath test may not be used in a *civil action*." (Emphasis added).

It is the Administration's contention that a § 16–205.1 administrative hearing is not a court action. The Administration argues that § 1–101(c) of the Courts & Judicial Proceedings

Article defines a court as "the Court of Appeals, Court of Special Appeals, circuit court, and District Court of Maryland, or any of them, unless the context clearly requires a contrary meaning. It does not include an orphans' court, or the Maryland Tax Court." [7] As the Office of Administrative Hearings is not included in this definition, it cannot, according to petitioner, be considered a court in which a "court action" could take place.

Respondent argues that, while § 1–101(c) of the Courts & Judicial Proceedings Article defines what a court is, it does not specifically define what a "court action" is and therefore, an administrative hearing before an ALJ can be a "court action." We disagree. Examining the plain language of § 16–205.2(c) we find the term "court action," as used, to be clear and unambiguous. A court is defined as "[a] governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice." BLACK'S LAW DICTIONARY 378 (8th ed.2004). The General Assembly specifically defines Maryland courts in § 1–101(c) of the Courts & Judicial Proceedings Article, as stated above.[8] An action is defined as "[a] civil or criminal judicial proceeding." BLACK'S LAW DICTIONARY 31 (8th ed.2004). Thus, a "court action" is a proceeding in the Court of Appeals, the Court of Special Appeals, Circuit Court for a county or Baltimore City, District Court of Maryland or an Orphans' Court. An administrative hearing before an ALJ, pursuant to § 16–205.1, or any hearing before an administrative agency does not fall within this field. Such a hearing, pursuant to § 16–205.1, does not take place in one of Maryland's enumerated "courts." It is an administrative proceeding and not a "court action."

---

7. As stated *infra*, footnote 8, an Orphans' Court exercises judicial power under the Maryland Constitution.

8. This statute is considered along with Section I, Article IV of the Maryland Constitution, which establishes the "judicial powers" of this State:

"The Judicial power of this State is vested in a Court of Appeals, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court."

This interpretation is supported in our case law. In *Janes v. State*, 350 Md. 284, 302, 711 A.2d 1319, 1328 (1998), we found that collateral estoppel does not operate in respect to the relationship between criminal prosecutions for drunken driving and driver's license suspension hearings. This is because " *§ 16–205.1–type proceedings do not sufficiently resemble court proceedings,* even though the agency acts in a quasi-judicial capacity, to serve as the basis of a constitutional estoppel. They are ordinarily informal in nature, intended to provide minimally necessary due process before temporarily suspending an important privilege. . . ." *Id.* (emphasis added). We also stated that "the General Assembly has made clear through the enactment of § 16–205.1(*l*)(1) that criminal proceedings under § 21–902 [also of the Transportation Article] and administrative proceedings under § 16–205.1 are independent of one another and that findings made in one do not affect the other." *Id.* at 304, 711 A.2d at 1328; *see also Motor Vehicle Admin. v. Richards,* 356 Md. 356, 377, 739 A.2d 58, 70 (1999) (finding that "[a]ffording licensees the opportunity to invoke the exclusionary rule of the Fourth Amendment in license suspension proceedings would not only interfere with the informal and summary nature of those proceedings but also alter their purposefully limited scope, as prescribed under § 16–205.1(f)(7)").

The Court of Special Appeals addressed when evidence of a PBT was not admissible in *Harmon v. State,* 147 Md.App. 452, 809 A.2d 696 (2002), where the court considered whether a trial court committed error by admitting into a probation violation evidentiary hearing, evidence of a PBT that was performed on the defendant during his participation in a work-release program. The Court of Special Appeals found the language of § 16–205.2(c) to be "exceedingly clear." *Id.* at 468, 809 A.2d at 705. In finding that the trial court committed error by admitting evidence of the PBT, the court held that:

"Section 16–205.2 pronounces that a PBT 'may *not* be used as evidence by the State in *any* court action.' (Emphasis added). No exceptions are embodied in the text, nor is the mandatory language of the text limited to transportation

actions. *Indeed, the only limitation is that the action must be a court action, which the hearing below surely was.* Regardless of its precise nature, it was an evidentiary court proceeding with significant consequences to appellant."

*Id.* (emphasis added). The evidentiary hearing in *Harmon* took place in the Circuit Court. It arose out of and was part of a criminal court proceeding. Thus, it was a court action. The hearing in the case *sub judice* was a § 16–205.1 administrative hearing in front of an ALJ and was, therefore, not a court action.

In addition, it is important to note that administrative hearings are distinguishable from court actions and civil actions on the basis of evidentiary standards. As indicated in the case law above, administrative hearings are ordinarily informal in nature. *Richards,* 356 Md. at 377, 739 A.2d at 70; *Janes,* 350 Md. at 302, 711 A.2d at 1328; *see also Gorin v. Board of County Com'rs,* 244 Md. 106, 110, 223 A.2d 237, 239 (1966) (finding that "[w]hile *proceedings before an administrative board are informal and the strict rules of evidence do not apply,* when the board is functioning in an adversary proceeding, the fundamentals applicable to the decision of adjudicative facts by any tribunal must be preserved") (emphasis added). Administrative hearings involving State agencies generally are governed by the rules of evidence as outlined in Md.Code (1984, 2004 Repl.Vol.), § 10–213 of the State Government Article[9] and COMAR 28.02.01.18.[10] In addition, generally,

---

**9.** Section 10–213, in relevant part, states:

"(a) *In general.*—(1) Each party in a contested case shall offer all of the evidence that the party wishes to have made part of the record.

(2) If the agency has any evidence that the agency wishes to use in adjudicating the contested case, the agency shall make the evidence part of the record.

(b) *Probative evidence.*—The presiding officer may admit probative evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs and give probative effect to that evidence.

(c) *Hearsay.*—*Evidence may not be excluded solely on the basis that it is hearsay.*" (Emphasis added.)

**10.** COMAR 28.02.01.18 is substantially the same as § 10–213 of the State Government Article, stating in relevant part:

administrative agencies are not bound by technical rules of evidence. *Fairchild Hiller Corp. v. Supervisor of Assmts.*, 267 Md. 519, 523, 298 A.2d 148, 150 (1973). The Administration's administrative procedure concerning evidence specifically spells this out in COMAR 11.11.02.10C, stating that *"[t]he administrative law judge or other trier of fact is not bound by the technical rules of evidence."* (Emphasis added).

It is also respondent's contention that an administrative hearing is a "court action" because an ALJ's decision can be appealed to the Circuit Court or an appellate court. Such an action is not technically an appeal. It is an original action for judicial review of an administrative agency action and is subject to limited standards of review, as discussed *infra* in our response to the Administration's second question. Therefore, respondent's arguments are further flawed.

Furthermore, an administrative hearing is not a "civil action." *Black's Law Dictionary* defines a "civil action" the same as it does an "action," "See ACTION (4)." BLACK'S LAW DICTIONARY 262 (8th ed.2004). Therefore, a "civil action" is defined as "[a] civil or criminal judicial proceeding." BLACK'S LAW DICTIONARY 31 (8th ed.2004). This conforms with Maryland Rule 2–101(a) which states that "[a] civil action is commenced by filing a complaint with a *court.*" (Emphasis added). As discussed *supra*, a § 16–205.1 administrative hearing clearly falls outside the scope of a court action. In fact, pursuant to § 12–206 of the Transportation Article "a hearing held under the Maryland Vehicle Law shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act—Contested Cases)." Section 10–203(a)(2) of the State Government Article, titled

---

"A. Evidence shall be admitted in accordance with State Government Article, § 10–213, Annotated Code of Maryland, and other pertinent law.

B. The judge may admit evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs, and give probative effect to that evidence.

C. *Evidence may not be excluded solely on the basis that it is hearsay."* (Emphasis added.)

"Scope of subtitle," explicitly states that Subtitle 2 does not apply to "the Judicial Branch of the State government or an agency of the Judicial Branch." Additionally, § 10–202(d) of the State Government Article defines adversarial proceedings before an agency as "contested cases," not civil actions.

For the above reasons, the Circuit Court erred in ruling that PBT results are inadmissible in administrative hearings. Section 16–205.1 administrative hearings are not court actions or civil actions, thus, PBT results are not prohibited blanketedly as evidence in such hearings by § 16–205.2(c).

### B. The Circuit Court Improperly Substituted Its Judgment for that of the Administration.

The second issue in the case *sub judice* is whether the Circuit Court improperly substituted its judgment for that of the Administration when it reversed and vacated the Administration's decision because it found that the ALJ in the administrative hearing did not properly consider respondent's employment as an insurance adjuster and the fact that it had been eight years since his prior test refusal. We hold that the Circuit Court failed to apply the appropriate standard of review to the administrative agency's decision and thus, improperly substituted its judgment for that of the Administration.

Judicial review of an administrative agency's decision is authorized by Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article. Under § 10–222(h), when exercising such review, the court may:

"(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

The Circuit Court in the case *sub judice* found that the decision of the ALJ was not supported by competent, material, and substantial evidence and therefore was arbitrary and capricious. Pursuant to § 10–222(h)(3)(v) of the State Government Article the Circuit Court reversed and vacated the decision of the ALJ. The Administration argues that the Circuit Court improperly substituted its judgment for that of the ALJ and, consequently, applied the wrong standard of review to the ALJ's decision. We agree.

## Standard of Review

"Our review of the agency's factual finding entails only an appraisal and evaluation of the agency's factfinding and not an independent decision on the evidence." *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998); *Anderson v. Dep't of Pub. Safety & Corr. Servs.,* 330 Md. 187, 212, 623 A.2d 198, 210 (1993). When the agency is acting in a fact-finding or quasi-judicial capacity, courts are to review its decision to determine "whether the contested decision was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner." *Dep't of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 224, 334 A.2d 514, 523 (1975); *see Goodwich v. Nolan,* 343 Md. 130, 148, 680 A.2d 1040, 1049 (1996); *Weiner v. Maryland Ins. Admin.,* 337 Md. 181, 190, 652 A.2d 125, 129 (1995). "A reviewing court, be it a circuit court *or an appellate court,* shall apply the substantial evidence test to the final decisions of an administrative agency. . . ." *Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985) (emphasis added); *see State Highway Admin. v. David A. Bramble, Inc.,* 351 Md. 226, 238, 717 A.2d 943, 949 (1998); *Anderson,* 330 Md. at 212, 623 A.2d at 210; *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 511–12, 390 A.2d 1119, 1123–24 (1978).

■■■■■ In *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 729 A.2d 376 (1999), we closely examined an appellate court's role in reviewing an administrative agency's decision, in particular, the substantial evidence test. Judge Eldridge, writing for the Court, stated that:

"A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' *United Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine,* 350 Md. 339, 349, 711 A.2d 1346, 1350–1351 (1998); *Catonsville Nursing v. Loveman,* 349 Md. 560, 568–569, 709 A.2d 749, 753 (1998).

"In applying the substantial evidence test, a reviewing court decides ' " 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " ' *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). See *Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court ' "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.' *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–835, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions 'are *prima facie* correct and carry with them the presumption of validity').

"Despite some unfortunate language that has crept into a few of our opinions, a 'court's task on review is *not* to " ' "substitute its judgment for the expertise of those persons who constitute the administrative agency," ' " ' *United Parcel v. People's Counsel, supra,* 336 Md. at 576–577, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by those officials charged with administering the statute is … entitled to weight'). Furthermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make 'significant discretionary policy determinations'); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ('application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the' legal issues)."

*Banks,* at 67–69, 729 A.2d at 380–81 (footnotes omitted).[11] In the case *sub judice,* the substantial evidence test was not

---

11. In *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 572, 873 A.2d 1145, 1155 (2005), the Court cited the legion of cases in which the principles encapsulated in *Banks* have been reaffirmed:

"See, e.g., Christopher v. Montgomery County Dept. of Health & Human Services, 381 Md. 188, 197–199, 849 A.2d 46, 51–52 (2004); Board of Physician Quality Assurance v. Mullan, 381 Md. 157, 164–172, 848 A.2d 642, 646–651 (2004); Finucan v. Board of Physician Quality Assurance, 380 Md. 577, 590–597, 846 A.2d 377, 384–389 (2004); Sadler v. Dimensions, 378 Md. 509, 528–530, 836 A.2d 655,

properly applied by the Circuit Court to the ALJ's final decision.

The Circuit Court stated in **its** analysis of the ALJ's decision that:

"the ALJ did not give proper consideration to [respondent's] employment as an insurance adjuster for the past twenty-three years, to the fact that his prior alcohol offense was eight years ago, or that ignition interlock was an available option on his personal vehicle. What is most significant, however, is that the Administrative Law Judge considered the result of [respondent's] preliminary breath test which is prohibited under MD. Transp. Code Ann. § 16.205.2(c) . . ."

As discussed *supra*, the ALJ properly considered the result of respondent's PBT and evidence of such PBTs are permitted in § 16–205.1 administrative hearings. The record evidences that the ALJ did, in fact, give proper consideration to respondent's employment as an insurance adjuster for the past twenty-three years, to the fact that his prior alcohol offense was eight years ago, and that ignition interlock was an available option on his personal vehicle:

"*The record indicates that there was a prior refusal on July 12, 1996, followed by a 120–day suspension.* Therefore, *this is a second offense with a possible one-year suspension.* In deciding what to do, I consider a number of different factors. *I have considered the prior refusal,* which put

666–667 (2003); *Smack v. Dept. of Health,* 378 Md. 298, 313 n. 7, 835 A.2d 1175, 1183–1184 n. 7 (2003); *Montgomery v. E.C.I.,* 377 Md. 615, 625–626, 835 A.2d 169, 175–176 (2003); *Watkins v. Secretary, Dept. of Safety & Correctional Services,* 377 Md. 34, 45–46, 831 A.2d 1079, 1086 (2003); *Fosler v. Panoramic Design, Ltd.,* 376 Md. 118, 136–137, 829 A.2d 271, 282 (2003); *Kram v. Maryland Military,* 374 Md. 651, 656–657, 824 A.2d 99, 102–103 (2003); *MVA v. Lytle,* 374 Md. 37, 56–57, 821 A.2d 62, 73 (2003); *Mehrling v. Nationwide,* 371 Md. 40, 57, 806 A.2d 662, 672 (2002); *Annapolis Market v. Parker,* 369 Md. 689, 703–704, 802 A.2d 1029, 1038 (2002); *Jordan v. Hebbville,* 369 Md. 439, 449–452, 800 A.2d 768, 774–776 (2002); *Division of Labor v. Triangle General Contractors, Inc.,* 366 Md. 407, 416–417, 784 A.2d 534, 539–540 (2001); *Marzullo v. Kahl,* 366 Md. 158, 171–173, 783 A.2d 169, 177–178 (2001); *Gigeous v. ECI,* 363 Md. 481, 495–497, 769 A.2d 912, 921–922 (2001)."

[respondent] in—resulted in some alcohol treatment. *I've considered that he's employed as an insurance adjuster* (INAUDIBLE).... *I have considered the request for the interlock device....* " [Emphasis added.]

Pursuant to § 16-205.1(b)(1)(i)(2)(B) and (n)(3) and (4) there are only two options for the Administration when faced with a licensed individual who has refused to take a chemical breath test for a second time: (1) suspend the driver's license for one year, or (2) modify a suspension or issue a restrictive license to a licensee who participates in the Ignition Interlock System Program as outlined under § 16-404.1.

 The ALJ used her discretion and decided that suspension was the appropriate sanction in this case. There is substantial evidence in the record to support this decision. This was respondent's second refusal, he had admitted to drinking six beers before driving, his PBT indicated a high alcohol level at the time of his arrest, and the alcohol treatment report he submitted to the ALJ failed to mention his prior drinking and driving incident. It is clear that a "reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck,* 283 Md. at 512, 390 A.2d at 1123 (quoting *Dickinson–Tidewater v. Supervisor,* 273 Md. 245, 256, 329 A.2d 18, 25 (1974)). The ALJ's imposition of a one-year suspension of the respondent's driving license based upon the facts in the record is one of two options available and it is within the discretion of the ALJ as to which option is appropriate. *See Motor Vehicle Admin. v. Lindsay,* 309 Md. 557, 564, 525 A.2d 1051, 1054 (1987) (where "[t]he hearing officer decided to exercise the discretion allowed by § 16-405(a) [of the Transportation Article] and suspend [the driver's] license for a relatively brief period"). It is evident from the record that the decision of the ALJ is supported by competent and substantial evidence and is, therefore, not arbitrary and capricious. There is absolutely no indication in the record of the matter at bar that the ALJ acted illegally, or in an arbitrary, capricious, oppressive or fraudulent manner. Thus, it was well within the ALJ's discretion to impose the

sanction of a one-year suspension of Maryland driving privileges upon respondent and by reversing and vacating the Agency's decision the Circuit Court improperly substituted its own judgment for that of the administrative agency—the ALJ.

## IV. Conclusion

In reversing the decision of the Circuit Court for Carroll County, we find that the Circuit Court was incorrect in its interpretation of § 16–205.2(c) of the Transportation Article and that the Circuit Court improperly substituted its judgment for that of the ALJ when it reversed and vacated the agency's decision. For the reasons stated herein, we reverse the judgment of the Circuit Court for Carroll County.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT AFFIRMING THE AGENCY DETERMINATION; COSTS TO BE PAID BY RESPONDENT.**