## S04G1409. THE STATE v. COLLIER.

(612 SE2d 281)

HINES, Justice.

We granted certiorari to the Court of Appeals in *Collier v. State*, 266 Ga. App. 762 (598 SE2d 373) (2004), to consider whether the police have the authority to seek a search warrant to compel a person to submit blood and urine samples for drug testing when that person has invoked his or her right under the implied consent law to refuse such testing. We conclude, as did the Court of Appeals, that the police do not have that authority; therefore, we affirm.

The Court of Appeals found that the evidence at trial revealed that Steven William Collier drove his pickup truck through a red light, colliding with a car, which resulted in the deaths of the car's driver and passenger. When police arrived at the scene, Collier let his passenger claim that she had been driving the truck. After being read the implied consent notice, Collier's passenger declined to submit to tests of her blood and urine. The police obtained a search warrant and later at a hospital procured blood and urine samples from the passenger.

After Collier witnessed his passenger being taken to the hospital for the tests, he fled the scene, but was caught by police and placed in a patrol car. The police informed Collier that they would have to test his blood and urine because there was a question about who had been driving the truck at the time of the collision. Collier was given the implied consent warning, and he refused to consent to the testing. Collier eventually consented after the police threatened to get a search warrant and to use a catheter to obtain the samples. Collier's blood and urine samples contained amphetamine and methamphetamine.

Following his convictions, Collier claimed that his trial counsel was ineffective because counsel failed to move to suppress evidence of the blood and urine tests on the basis that his consent to the tests was coerced. He argued that he was misled by the police because they could not compel him to submit to the tests that he refused to undergo voluntarily. The Court of Appeals agreed that Collier's refusal to take a State-administered test did not authorize the police to obtain a search warrant and forcibly conduct such tests.

This Court has made plain that Georgia's implied consent statute, OCGA § 40-5-55, affords a suspect the opportunity to refuse to submit to a State-administered test of the suspect's blood, urine, or other bodily substances. *Cooper v. State*, 277 Ga. 282, 290 (V) (587 SE2d 605) (2003); *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985). This is so even though our State Constitution generally does not protect citizens from the compelled testing of certain bodily

substances and the use at trial of the results of such compelled testing. *Cooper v. State* at 290 (V).

The right of refusal is reinforced by the express language of OCGA § 40-5-67.1 (d), which provides:

> If a person under arrest or a person who was involved in any traffic accident resulting in serious injuries or fatalities refuses, upon the request of a law enforcement officer, to submit to a chemical test designated by the law enforcement officer as provided in subsection (a) of this Code section, *no test shall be given*; but the law enforcement officer shall report the refusal to the department. Upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391 or that such person had been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state and was involved in a traffic accident which resulted in serious injuries or fatalities and that the person had refused to submit to the test upon the request of the law enforcement officer, the department shall suspend the person's driver's license, permit, or nonresident operating privilege for a period of one year or if the person was operating or in actual physical control of a commercial motor vehicle, the department shall disqualify the person from operating a commercial motor vehicle and shall suspend the person's driver's license, permit, or nonresident operating privilege, subject to review as provided for in this chapter.

(Emphasis supplied.) The word " '[s]hall' is generally construed as a word of command." *Mead v. Sheffield*, 278 Ga. 268, 269 (601 SE2d 99) (2004). The import of the language is mandatory. *O'Donnell v. Durham*, 275 Ga. 860, 861 (3) (573 SE2d 23) (2002). Therefore, the statute plainly requires that if an individual does not consent to the designated chemical test, then no test is to be administered. This precludes any discretion on the part of the officer to attempt to obtain such testing.

Under the implied consent law, the consequences of refusing the requested testing are the possibility of admission of such refusal at a criminal trial as well as suspension of the driver's license. *State v. Leviner*, 213 Ga. App. 99, 100 (2) (443 SE2d 688) (1994). These legislatively-created sanctions do not include being compelled to submit to testing through the use of a search warrant. Otherwise, the

right of refusal under the implied consent law would be rendered meaningless. The prohibition against forced testing is not altered by the fact that the investigating officer might have the probable cause necessary to support the issuance of a search warrant. Inasmuch as the implied consent law contemplates arrest, the presence of probable cause that the individual was operating a motor vehicle in violation of OCGA § 40-6-391 is a prerequisite. OCGA §§ 40-5-55 (a), 40-5-67.1 (d); *Cooper v. State*, supra.

The State argues that this Court must interpret OCGA § 40-5-67.1 (d) in light of its purpose and legislative history, that it is a remedial statute which should be liberally construed to effectuate its purpose, and that inasmuch as the implied consent provisions make no mention of the use of search warrants, the language "no test shall be given" refers only to warrantless tests. But the State's arguments ignore the fact that "[w]here the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. [Cit.] In fact, '(w)here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.'" (Footnotes omitted.) *Abdulkadir v. State*, 279 Ga. 122, 123 (610 SE2d 50) (2005). OCGA § 40-5-67.1 (d) clearly prohibits the giving of any chemical test once the suspect refuses to submit to the requested one. It certainly makes no provision for the police to then attempt to obtain a search warrant.

The State further argues that the law of sister states supports its position that the General Assembly did not intend to prevent police from obtaining search warrants to obtain blood samples from suspected impaired drivers following a refusal under the implied consent laws. But examination of the cited cases reveals that they are either inapposite because the implied consent provisions at issue were substantially different from this state's implied consent law,[1] contain reasoning which is strained, unpersuasive and ignores express statutory language,[2] or actually support the view that the refusal provision is a blanket one.[3]

On the contrary, the decisions of many sister states with similar implied consent refusal provisions are in accord with the conclusion

---

[1] *Brown v. State*, 774 NE2d 1001 (Ind. App. 2002) (Indiana's implied consent law does not contain a provision stating no test shall be given); *State v. Zielke*, 403 NW2d 427 (Wis. Sup. Ct. 1987).

[2] *State v. Smith*, 134 SW3d 35 (Mo. App. 2003) (use of passive voice in the refusal provision of implied consent law results in it not specifying *who* is prohibited from giving a test); *Beeman v. State*, 86 SW3d 613 (Tex. Ct. of Crim. App. 2002) (ignores statutory provision that a specimen may not be taken if a person refuses to submit to the taking of a specimen).

[3] *Pena v. State*, 684 P2d 864 (Alaska Sup. Ct. 1984) (implied consent statute provides the exclusive authority for the administration of police-initiated chemical tests; this precludes chemical sobriety tests performed pursuant to search warrants).

that the police may not use a search warrant to circumvent the plain statutory bar to a forced chemical test following a suspect's refusal of the police-requested testing. See, e.g., *State v. McClead*, 566 SE2d 652 (W. Va. 2002); *State v. DiStefano*, 764 A2d 1156 (R.I. 2000); *State v. Adee*, 740 P2d 611 (Kan. 1987); *State v. Berry*, 428 A2d 1250 (N.H. 1981); *State v. Hitchens*, 294 NW2d 686 (Iowa 1980); *State v. Bellino*, 390 A2d 1014 (Me. 1978).[4]

The right to refuse to submit to state-administered chemical testing has been created by the General Assembly. *Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000). The General Assembly expressly contemplated the possibility of refusal and provided adverse consequences, other than the involuntary taking, by warrant or otherwise, of a specimen from the non-consenting suspect. See *Beeman v. State*, supra at 620. At present, the plain language of OCGA § 40-5-67.1 (d) restricts the ability of law enforcement to forcibly obtain that which has been refused.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 26, 2005 —
RECONSIDERATION DENIED MAY 23, 2005.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Jeffery W. Hunt, Assistant District Attorneys, Gary D. Bergman*, for appellant. *Allen M. Trapp, Jr.*, for appellee.

---

[4] Some of the implied consent statutes addressed in these decisions have subsequently been amended regarding the refusal provision.