923 A.2d 100

MOTOR VEHICLE ADMINISTRATION

v.

Scott H. SHEPARD.

No. 88 Sept. Term 2006.

Court of Appeals of Maryland.

May 15, 2007.

Dore J. Lebowitz, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Robert C. Cain, II, Asst. Atty. Gen., on brief), Glen Burnie, for petitioner.

John F.X. Costello (John F.X. Costello & Associates, LLC, on brief), Largo, for respondent.

Argued before RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, ELDRIDGE, JOHN C. (Retired, specially assigned) and WILNER, ALAN M. (Retired, specially assigned), JJ.

RAKER, J.

This case involves the suspension of a driver's license pursuant to Md.Code (1977, 2006 Rep. Vol., 2006 Supp.) § 16–205.1 of the Transportation Article.[1] Respondent's license was suspended after he refused to take an alcohol concentration test following a traffic stop for speeding. Respondent challenged the suspension before the Office of Administrative Hearings. The Administrative Law Judge ("ALJ") found respondent to be in violation of § 16–205.1. The Circuit Court for Montgomery County vacated that ruling. Because we find that the administrative ruling was based on substantial evidence and

---

1. Unless otherwise noted, all subsequent statutory references herein shall be to Md.Code (1977, 2006 Rep. Vol., 2006 Supp.) of the Transportation Article.

was not rendered on the basis of an erroneous conclusion of law, we shall reverse.

## I.

Section 16–205.1 of the Transportation Article, commonly known as Maryland's Implied Consent Law, provides the statutory structure for suspending the license of a driver who refuses to submit to testing for alcohol concentration. Section 16–205.1(a)(2) states as follows:

"Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol ..." Section 16–205.1(b)(2) requires a police officer who has *reasonable grounds* to believe that a person has been driving or attempting to drive a motor vehicle while under the influence of alcohol to:

"(i) Detain the person;

(ii) Request that the person permit a test to be taken;

(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

(iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under § 16–404.1 of this title, that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

(iv) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the

person knowingly refused to take a test arising out of the same circumstances as the violation."

Notwithstanding the implied consent to take a test, a driver is generally not compelled to submit to testing to determine alcohol concentration. § 16–205.1(b)(1). Section 16–205.1(b)(3), however, directs a police officer to respond to a driver's refusal to take a test by seizing the person's driver's license, serving a temporary order of suspension, issuing a temporary driver's license, and informing the driver of his or her right to a hearing and possible administrative sanctions.

Section 16–205.1(f)(8)(i) requires the Motor Vehicle Administration ("MVA") to suspend an individual's driver's license if the ALJ makes certain findings at an administrative hearing. The section states as follows:

"After a hearing, the Administration shall suspend the driver's license or privilege to drive of the person charged under subsection (b) or (c) of this section if:

1.   The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2.   There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3.   The police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed; and

4.   A.  The person refused to take the test; or B. A test to determine alcohol concentration was taken and the test

result indicated an alcohol concentration of 0.08 or more
at the time of testing."

An aggrieved driver whose license has been suspended may
seek judicial review of the administrative decision before a
circuit court of this State. § 16–205.1(j).

## II.

Respondent's license was suspended pursuant to § 16–
205.1(f)(8)(i) following a hearing before the Office of Adminis-
trative Hearings. At the hearing, the ALJ issued an opinion
and order based upon a form DR–15A[2] filed by the arresting
officer and the testimony of respondent. The DR–15A indicat-
ed that at 1:03 a.m., on October 7, 2005, Gaithersburg City
Police Officer Finch saw respondent driving in excess of 132
miles per hour, that he stopped the vehicle, there was a strong
odor of alcohol on respondent's breath, respondent had blood-
shot and watery eyes, respondent blew a preliminary breath
test of 0. 10, and respondent admitted drinking two beers.
Based on this evidence, the ALJ made the following findings
of facts.

On October 7, 2005, at 1:03 a.m., Officer Finch observed a
Porsche Boxster traveling at a speed in excess of 132 miles
per hour on Route I–270 in Montgomery County, Maryland.
The officer initiated a traffic stop, at which time he identified
respondent as the driver of the Porsche. Respondent had a
strong odor of alcohol on his breath, as well as watery and
bloodshot eyes. Officer Finch asked respondent if he had
been drinking, and respondent stated that he had two beers
earlier that evening. After the officer administered a prelimi-
nary breath test, respondent performed a standard field sobri-
ety test, which included a horizontal gaze nystagmus test, a
walk and turn test, and a one leg stand test. Officer Finch

---

**2.** Form DR–15A, "Officer's Certification and Order of Suspension,"
contains general factual information about the driver and the incident
giving rise to a license suspension under § 16–205.1. Section 16–
205.1(b)(3) requires that the officer personally serve the order of sus-
pension upon the driver if the person refuses to take the chemical test
or if the test results in an alcohol concentration of 0.08 or higher.

arrested respondent for driving under the influence of alcohol, and indicated in his report that respondent failed the field sobriety test.

Back at the police station, Officer Finch requested that respondent take a breathalyzer test to determine his alcohol concentration level. The officer advised respondent of administrative and criminal sanctions he would face for either refusing to submit to testing or submitting to testing where the results showed an alcohol concentration level above the legal limit. Respondent signed a form DR–15,[3] thus acknowledging that the officer advised him of the possible sanctions he would face for refusing the test. Respondent refused the breath test. Pursuant to the statute, and acting on behalf of the MVA, Officer Finch served an order of suspension of respondent's driver's license.

At the administrative hearing, the ALJ determined that Officer Finch had reasonable grounds to believe respondent had been driving under the influence of alcohol on the night in question. The ALJ ruled orally as follows:

> "I've considered the evidence and the testimony presented in this case, and I find by a preponderance of the evidence the following facts. The police officer who stopped or detained you, Mr. Shepard, did have reasonable grounds to believe that you were driving or attempting to drive a motor vehicle while under the influence of alcohol because when he first came upon you, you were speeding 132 miles per hour, and there was further evidence of the use of alcohol based upon the fact that it was early morning hours, you had an odor of alcohol, you had bloodshot, watery eyes, the standard field sobriety tests were performed unsatisfactorily, and you admitted drinking.

*  *  *

---

3. Form DR–15, "Advice of Rights and Administrative Penalties for Refusal to Submit to a Chemical Test Statement," is derived from § 16–205.1(b) and contains warnings required under Maryland's Implied Consent Law.

The issue was alcohol in this case pretty clearly. And in any event the issue is not probable cause. That is the issue in a criminal proceeding. The issue in this case is reasonable grounds. The reasonable grounds as stated by the officer are much more than sufficient. He has stated more than sufficient reasonable grounds to request that you take a test. That's what he was doing here. The standard field sobriety tests are identified contrary to counsel's statement. Horizontal gaze nystagmus, walk and turn, one leg stand, he says that those tests were done. He said based on the results arrested. There is also a reasonable inference that I am going to draw that based upon that language that the tests were done not to his satisfaction which is why he arrested you for driving while under the influence of alcohol. The officer did fully advise you of the sanctions to be imposed, requested that you take a test which you refused. Therefore, you are in violation of § 16–205.1"

The ALJ filed written findings of fact and conclusions of law, in which she stated § 16–205.1 was violated based upon the following: "early A.M. hours, odor alcohol, bloodshot, watery eyes, SFSTS [standard field sobriety tests] performed unsatisfactorily, admitted drinking." The ALJ imposed a one year suspension of respondent's driver's license, stayed on the condition that he participate in the Ignition Interlock Program for a period of eighteen months.

Respondent filed a petition for judicial review in the Circuit Court for Montgomery County. Before the Circuit Court, respondent argued as follows:

"[T]he operative allegations upon which the administrative law judge premised his decision were, 'standard field sobriety tests, the nystagmus gaze, walk and turn, one leg stand were done, based on results, arrested.' We argued before the administrative law judge, and we argue here, that those test results, that are not enumerated in the certification of the officer, do not constitute competent evidence upon which an administrative agency may base its decision that a reasonable person would have believed that the individual in

question had operated a motor vehicle while impaired. That is the central thrust of our argument."

Respondent maintained that an officer must state the factual basis upon which he concludes that field sobriety tests are not done to his satisfaction. He argued that the evidence presented and the inferences drawn by the ALJ were incompetent and therefore, the factual decision of the ALJ was not based upon substantial evidence.

The Circuit Court agreed. The Circuit Court vacated the ruling after determining that the ALJ based her ruling solely on the results of the field sobriety test. The court concluded that the results of the sobriety test constituted incompetent evidence because particular facts regarding respondent's performance on the field sobriety test were not identified on the form DR–15A. The court reasoned as follows:

"He expressly states the basis of his ruling on the unsatisfactory performance of enumerated roadside sobriety tests, we have no clue of what that was. And I don't believe the law is that the Court should say, well, because the defendant failed, and in any kind of test, because the blood test failed or you could come in on a criminal case and say, because the DNA indicated you were there without getting any results, without saying what it was at all . . .

But what we have here is unsatisfactory performance. Now, we hear it all the time in guilty pleas, but that's an entirely different scenario. But not when this Court is here to make its decision based upon, look at the findings of the administrative law judge, and says it is not my role to sit here and decide that a finding of stepping off line and weaving, whether that's reasonable grounds to make an arrest or not, that is not the role of this Court to go back like an instant replay, second-guess that, and say that shouldn't have been reasonable grounds. That's just not the role of this Court. But this Court doesn't have before it what the grounds were at all.

And for those reasons, the findings of the administrative law judge will be vacated, and the petition is sustained."

The MVA filed a petition for a writ of certiorari to this Court. We granted the petition to address the following question:

"Did the ALJ have substantial evidence to find the arresting officer who stopped Shepard had reasonable grounds to request a chemical breath test under [§ 16–205.1(f)(7)(i)(1) ], when the ALJ considered that Shepard was stopped for speeding 132 miles per hour, was observed at the time of his stop to have a strong odor of an alcoholic beverage on his breath, as well as watery bloodshot eyes, had a preliminary breath test result of 0.10 and was arrested based on the result of field sobriety tests, which the officer did not describe in detail in his written statements?"

*MVA v. Shepard,* 396 Md. 9, 912 A.2d 646 (2006).

## III.

Before this Court, the MVA argues that there was substantial evidence to support the ruling of the ALJ that respondent violated § 16–205.1. The MVA argues that the statute does not require an officer to provide a detailed written description of how a person performs on a field sobriety test and that the DR–15A upon which the ALJ relied contained sufficient information and reasonable grounds to ask respondent to take the alcohol concentration test. Alternatively, the MVA argues that even without the results of the field sobriety test, the officer's certification indicated that respondent was traveling at an excessive rate of speed, had a strong odor of alcohol on his breath, had watery and bloodshot eyes, and admitted to drinking, all of which are indicia of intoxication.

In his initial argument, as noted in his brief before this Court, respondent states that the ALJ found that "the only bases upon which the officer had reasonable grounds to believe that Shepard was attempting to drive while under the influence is articulated in the Administrative Law Judge's written finding of fact, i.e., that Shepard was speeding at 132 miles per hour." Somewhat inconsistently, respondent then argues that the ALJ relied solely, and improperly, on the

conclusory statement of the officer as to the results of the field sobriety test. Respondent's second argument is that the ALJ applied the wrong legal standard. In his brief before this Court, respondent states that "reasonable grounds" as used in the statute means "probable cause." At oral argument, based upon this Court's ruling in *Volodarsky v. Tarachanskaya,* 397 Md. 291, 916 A.2d 991 (2007), a case filed after respondent's brief, he maintained that the term "reasonable grounds" as seen in § 16–205.1 means "a preponderance of the evidence standard."

## IV.

■ We consider first whether the evidence at the administrative hearing was sufficient for the ALJ to conclude that Officer Finch possessed the reasonable grounds necessary to request a test to determine respondent's alcohol concentration. We hold that the ALJ's ruling was supported by substantial evidence to show that the officer possessed the requisite reasonable grounds required by § 16–205.1.

■ Maryland courts play a limited role when reviewing adjudicatory decisions of administrative agencies. *See Fowler v. MVA,* 394 Md. 331, 342, 906 A.2d 347, 353 (2006). The Maryland Administrative Procedure Act, Md.Code (1984, 2004 Repl.Vol., 2006 Supp.) § 10–201 *et seq.* of the State Government Article, sets out the framework for judicial review of administrative agency decisions, as follows:

"*Decision*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Md.Code (1984, 2004 Repl.Vol., 2006 Supp.) § 10–222(h) of the State Government Article. Under the Administrative Procedure Act, a court's role in reviewing an agency adjudicatory decision is very narrow. *Maryland Aviation Administration v. Noland,* 386 Md. 556, 570–71, 873 A.2d 1145, 1154 (2005).

In *Board of Physician v. Banks,* 354 Md. 59, 729 A.2d 376 (1999), we discussed the standard of review of administrative agency decisions. We noted as follows:

"A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

"In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence."

*Id.* at 67–68, 729 A.2d at 380–81 (internal citations and quotations omitted). *See also MVA v. Illiano,* 390 Md. 265, 274–75, 888 A.2d 329, 335 (2005). A court may set aside an agency's factual finding only when the finding is "unsupported by competent, material, and substantial evidence in light of the entire record as submitted." *Spencer v. State Board of Pharmacy,* 380 Md. 515, 529, 846 A.2d 341, 349 (2004).

In the case *sub judice*, the substantial evidence test was not applied properly by the Circuit Court to the ALJ's final decision. The ALJ did not err in concluding that respondent violated § 16–205.1. The ALJ's factual findings were supported by substantial evidence to support the finding that the police officer who initiated the traffic stop had reasonable grounds to believe respondent was driving a motor vehicle while under the influence of alcohol. Contrary to the conclusion of the Circuit Court, the record reflects that the ALJ considered the totality of the officer's observations when she determined whether he possessed the requisite reasonable grounds. In the judge's oral findings of fact, she stated that she considered the odor of alcohol, respondent's physical condition, his admitted use of alcohol earlier that evening, his excessive speed of 132 miles per hour, and his performance on the field sobriety tests. *See c.f., State v. Orvis*, 143 Vt. 388, 465 A.2d 1361, 1362 (1983) (holding that a "mild odor of alcohol, defendant's excited state and his admission of alcohol consumption, in conjunction with the fact of the 3:00 a.m. automobile accident and admitted operation, would appear to provide reasonable grounds for further inquiry by a law enforcement officer").

Respondent's assertion that the ALJ considered only the "factually unsupported field sobriety test" or the fact that respondent was traveling in excess of 132 miles per hour is simply wrong and unsupported by the record. The Circuit Court's conclusion is erroneous as well. The Circuit Court determined that the ALJ based her decision exclusively on the results of the field sobriety test. The court found that because the field sobriety test results were not explained in sufficient detail, the ruling was based on incompetent evidence and could not be sustained. The test is whether there is substantial evidence to support the decision of the agency. As the ALJ made clear, she considered the combined evidence at the hearing "more than sufficient ... to request that [respondent] take a test." She did not simply consider the field sobriety test and the evidence she considered was clearly

more than sufficient to request respondent to take a test to determine his alcohol concentration.

## V.

We turn now to respondent's argument that the ALJ applied the wrong legal standard in construing the meaning of "reasonable grounds" as used in § 16–205.1. Based on our recent opinion in *Volodarsky,* 397 Md. 291, 916 A.2d 991, he argues that "reasonable grounds" means "a preponderance of the evidence standard" or at the very least, probable cause. We disagree and hold that the term "reasonable grounds" as used in § 16–205.1 means "reasonable articulable suspicion" and not preponderance of the evidence or probable cause.

In interpreting a statute, we have stated repeatedly that the cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *See Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006). In *Mountain Lake,* we explained as follows:

"In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. If a statute has more than one reasonable interpretation, it is ambiguous. If the language of the statute is ambiguous, we resolve the ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose. We consider both the ordinary meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act. We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense. We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory."

*Id.* (internal citations omitted).

The United States Supreme Court addressed the threat to public safety caused by drunk drivers in *South Dakota v.*

*Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The Court stated as follows:

> "The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy. *See Breithaupt v. Abram,* 352 U.S. 432, 439, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) ('The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield'); *Tate v. Short,* 401 U.S. 395, 401, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (BLACKMUN, J., concurring) (deploring 'traffic irresponsibility and the frightful carnage it spews upon our highways'); *Perez v. Campbell,* 402 U.S. 637, 657, 672, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (BLACKMUN, J., concurring) (footnote omitted) ('The slaughter on the highways of this Nation exceeds the death toll of all our wars'); *Mackey v. Montrym,* 443 U.S. 1, 17–19, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (recognizing the 'compelling interest in highway safety')."

*Neville,* 459 U.S. at 558–59, 103 S.Ct. at 920.

■■ In response to the public concern about the dangers of drunk driving, the Maryland General Assembly rewrote § 16–205.1, referring to the rewritten statute as Maryland's "implied consent" and "administrative per se" law against drunk driving. *See Fowler,* 394 Md. at 343 n. 10, 906 A.2d at 354 n. 10. The statute was enacted in 1989 to allow a driver's license to be suspended promptly for suspected drunken driving if the person refused a test to determine alcohol concentration. *See Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 460–62, 597 A.2d 939, 941–43 (1991). The purpose of the statute was to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the statute was not meant to protect drivers. *MVA v. Richards,* 356 Md. 356, 374, 739 A.2d 58, 68 (1999).

Section 16–205.1 does not require an arrest to precede an officer's request for the driver to take a test.[4] *Richards*, 356 Md. at 374, 739 A.2d at 68 (stating that § 16–205.1 requires that the police officer who stops or detains the individual to have reasonable grounds to believe the individual was driving or attempting to drive while under the influence of alcohol and does not require that the police officer have probable cause to arrest). Rather, the statute requires that "the person should be *detained* on *suspicion* of driving or attempting to drive while under the influence of alcohol." § 16–205.1(a)(2).

As we have noted in the context of criminal cases, there are three types of police encounters: an arrest, an investigatory stop or detention, and a consensual encounter. *Swift v. State*, 393 Md. 139, 150, 899 A.2d 867, 873 (2006). An arrest requires probable cause; an investigatory detention, which is a seizure of limited duration, does not require probable cause but instead requires reasonable articulable suspicion; and a consensual encounter need not be supported by any level of suspicion. *Id.* Given the underlying purpose and plain language of § 16–205.1 requiring a detention and not an arrest, we conclude that the use of the word "detained," combined with the word "suspicion," means reasonable articulable suspicion and not probable cause.

Respondent argues alternatively that, based on our recent decision in *Volodarsky*, 397 Md. 291, 916 A.2d 991, the term

---

4. Some of our sister states require an arrest before an officer may request a driver to take a chemical test. Those states have generally interpreted their implied consent, per se statutes to require probable cause because of the arrest requirement. See *e.g., State v. Collier*, 279 Ga. 316, 612 S.E.2d 281, 284 (Ga.2005) (holding that the Georgia implied consent law contemplates arrest, and therefore requires probable cause to conduct an alcohol concentration test); *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo.2003) (en banc) (noting that Missouri law requires an arrest supported by probable cause before an officer may conduct an alcohol concentration test); *Pooler v. MVD*, 306 Or. 47, 755 P.2d 701, 702 (1988) (en banc) (noting that Oregon law requires an arrest supported by probable cause before an officer may request an alcohol concentration test).

"reasonable grounds" in § 16–205.1 means "preponderance of the evidence." We disagree.

*Volodarsky* was a child custody case in which one parent accused the other of child sexual abuse. The issue before the Court was the construction of Md.Code (1984, 2006 Repl.Vol.) § 9–101 of the Family Law Article. Section 9–101 requires, in any custody or visitation proceeding, that, if the court has "reasonable grounds to believe" that a child has been abused or neglected by a party to the proceeding, the court must determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to that party. § 9–101(a). The statute states that, unless the court finds specifically that there is no likelihood of further child abuse or neglect by the party, the court must either deny custody or visitation rights to that party or approve a supervised visitation arrangement that assures the safety and physiological, psychological, and emotional well-being of the child. § 9–101(b). In holding that "reasonable grounds" means the same as preponderance of the evidence under § 9–101, we reasoned as follows:

"The two subsections of § 9–101 must be read together. Subsection (a) requires that, if, in a custody or visitation proceeding, the court has reasonable grounds to believe that a child has been abused or neglected by a party to the proceeding, the court must determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party.

Subsection (b) then states the consequence of the court's determination that reasonable grounds for such a belief exist. In that event, the court must deny custody or visitation, except in a secure, supervised setting, unless it specifically finds 'that there is no likelihood *of further abuse or neglect by the party.*' (Emphasis added). To require a specific finding that *'further* abuse or neglect' is not likely clearly implies that there must be some sort of finding or determination by the court that abuse or neglect likely occurred in the first instance. The question is whether, *at a*

*minimum,* that finding must be made by at least a preponderance of the evidence.

\* \* \*

It defies logic and reason to permit a court to make what is essentially a finding of fact, especially one that may lead to the deprivation of a Constitutionally-based right of access to one's child, when the court is unable to find, even by the slimmest margin, that the fact is more likely so than not. How can a court have reasonable grounds for it to believe that an act occurred if it is not persuaded, from whatever evidence is properly before it, that the act more likely occurred than not? Under the Court of Special Appeals rationale, a court could find reasonable grounds to believe that which, in its own mind, it does not believe because, in its view, the credible evidence does not support the fact, and that strikes us as the antithesis of reasonableness."

*Volodarsky,* 397 Md. at 304–06, 916 A.2d at 999–1000 (emphasis in original).

The decision required by a circuit court judge under § 9–101 of the Family Law Article and that of the police officer on the road under § 16–205.1 of the Transportation Article are very different. The Family Law Article requires the judge to make a finding of fact—one which necessarily must be by a preponderance of the evidence. The police officer on the road need only have suspicion of intoxication to justify further investigation and further detention under § 16–205.1.

We pointed out in *Volodarsky* that the determination of reasonable grounds for a belief can involve either an objective or subjective analysis, depending on the circumstances. *Id.* at 306, 916 A.2d at 1000. When a police officer is called upon to make a preliminary determination based on incomplete and often non-testimonial hearsay evidence as to whether probable cause or reasonable grounds or reasonable suspicion exists to justify some further step in an investigation, the officer may take the evidence at face value and simply decide whether, if true, it leads to a reasonable belief that an offense was committed. *See id.* (noting that an "objective analysis is most

often used in situations in which only a preliminary determination need be made, based on incomplete and often non-testimonial hearsay evidence"). The result of such a determination is not an ultimate finding of fact, but simply a basis for taking a further procedural step—an arrest, a detention, a search, or, as in this case, a request to take a test to determine alcohol concentration. When a court is called upon to make a judicial finding, a different analysis may be required. The court often must make credibility determinations and weigh the value of the evidence. *Id.* at 307, 916 A.2d at 1000–01. Because the judicial finding has preclusive effect, the court, unless required to use a higher standard, must find its conclusion supported by at least a preponderance of the evidence, for anything less would necessarily be arbitrary. *Id.* at 305–06, 916 A.2d at 1000. We are not dealing here with that kind of analysis.

As we have indicated, reasonable grounds means less than probable cause. *Ipso facto,* it does not mean preponderance of the evidence.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE RULING OF THE ADMINISTRATIVE LAW JUDGE PRE-SIDING OVER RESPONDENT'S LICENSE SUSPENSION HEARING. COSTS TO BE PAID BY RESPONDENT.*

GREENE and ELDRIDGE, JJ., Concur.

ELDRIDGE, J., concurring:

I concur in the judgment and in Parts I through IV of the Court's opinion. I disagree, however, with Part V of the opinion. The issue discussed by the Court in Part V, namely whether "the ALJ applied the wrong legal standard in construing the meaning of 'reasonable grounds' as used in § 16–205.1," is not properly before the Court because it was not raised before the administrative agency. Moreover, even if the issue were properly before us, the "reasonable grounds" standard in a civil statute should be applied by the administrative

trier of facts as a matter of common sense, without becoming entangled in the intricacies of criminal law and the law of arrest. The "reasonableness" standard has been applied by triers of fact in a multitude of civil proceedings without courts or agencies delving into the criminal law of arrests, detentions, police encounters, etc.

## I.

It is a settled principle of Maryland administrative law that, in an action for judicial review of an adjudicatory administrative agency decision, the reviewing courts should decline to consider "an issue not raised before the agency," *Brodie v. Motor Vehicle Administration,* 367 Md. 1, 4, 785 A.2d 747, 749 (2001). Chief Judge Bell for the Court explained in *Department of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051, 1060 (2001):

"Maryland Code (1984, 1999 Repl.Vol.) § 10–222(a) of the State Government Article provides that 'a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision.' Thus, it is the final decision of the final decision maker at the administrative level ... that is subject to judicial review. Accordingly, the reviewing court, restricted to the record made before the administrative agency, see *Cicala v. Disability Review Bd. for Prince George's County,* 288 Md. 254, 260, 418 A.2d 205, 209 (1980), may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency. Stated differently, an appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency. *See County Council of Prince George's County v. Brandywine Enterprises, Inc.,* 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998) and cases cited in note 1, supra."

*See, also, e.g., Board of Education v. Heister,* 392 Md. 140, 147 n. 5, 896 A.2d 342, 346 n. 5 (2006) (" 'It is the function of the reviewing court to review only the materials that were in the record before the agency at the time it made its final deci-

sion,'" and an appellate court should not review a question which was "interjected in the case" in the circuit court); *Motor Vehicle Administration v. Weller*, 390 Md. 115, 128, 887 A.2d 1042, 1050 (2005) (" 'Because the issue of alleged error was not raised during the administrative proceeding, it was not properly raised in the judicial review proceeding, and therefore is not properly before us,'" quoting *Cicala v. Disability Rev. Bd. for Prince George's Co.*, 288 Md. 254, 263, 418 A.2d 205, 210–211 (1980)); *Mayor & Council of Rockville v. Woodmont Country Club*, 348 Md. 572, 582 n. 3, 705 A.2d 301, 305 n. 3 (1998) ("Judicial review of administrative decisions is limited to issues raised before the agency"); *Insurance Commissioner v. Equitable*, 339 Md. 596, 634, 664 A.2d 862, 881 (1995) ("We have repeatedly pointed out that judicial review of administrative decisions is limited to the issues or grounds dealt with by the administrative agency"), and cases there cited.

No issue concerning the interpretation or "meaning of 'reasonable grounds' as used in § 16–205.1" (majority opinion at 254, 923 A.2d at 107) was ever raised or decided at the administrative hearing in the instant case. Although counsel for the respondent Shepard, in oral argument before the ALJ, used both the phrase "probable cause" and the statutory phrase "reasonable grounds" in arguing that the police officer did not have a sufficient basis to believe that Shepard was driving his motor vehicle while under the influence of alcohol, counsel for Mr. Shepard made absolutely no argument with respect to the meaning of the phrase "reasonable grounds." Furthermore, although the ALJ, in the oral ruling rejecting counsel's arguments, pointed out that the statutory standard was "reasonable grounds" rather than "probable cause," the ALJ rendered no opinion or legal conclusion with respect to the meaning of the "reasonable grounds" standard. It was not an issue at the administrative hearing but was raised for the first time in the Circuit Court.

At the administrative hearing, on February 9, 2006, counsel for Mr. Shepard (Mr. John F.X. Costello) made what he categorized as three arguments relating to whether Mr. Shep-

ard should be sanctioned pursuant to § 16–20 5.1 of the Transportation Article.

Mr. Costello initially argued that Mr. Shepard's preliminary breath test (PBT) results, included in the police officer's certification (Form DR–15A), should not be admitted into evidence. Counsel relied upon a Court of Special Appeals opinion holding that PBT results were inadmissible in circuit court criminal cases.[1] The ALJ pointed out that a recent Court of Appeals opinion held that PBT results were admissible in administrative hearings.[2] Nevertheless, the ALJ ruled that, "if you don't want me to consider the PBT, I have no problem not considering it. I'll just read everything but the PBT."

Counsel's next arguments at the administrative hearing concerned the certification form. Mr. Costello argued that the refusal to take an alcohol concentration test "was not signed by the test technician" and that, because of the police officer's punctuation in the certification, the certification did not comply with § 16–205.1. This latter contention seemed to be that, because of the absence of a comma, it was not clear whether "this officer is certifying under his reasonable grounds that this man was under the influence of alcohol" or whether "he's certifying that based on the reasonable grounds he was driving a motor vehicle after consuming a controlled dangerous substance. There's absolutely no indication whatsoever that he was operating a motor vehicle after consuming a controlled dangerous substance." The ALJ, without ruling upon these contentions at the time, asked respondent's counsel to make "your third argument."

The third and final argument by respondent's counsel was that the evidence was insufficient for the police officer to have had reasonable grounds to believe that Mr. Shepard was driving while under the influence of alcohol. In particular,

---

1. *Harmon v. State,* 147 Md.App. 452, 809 A.2d 696 (2002).

2. *Motor Vehicle Administration v. Weller,* 390 Md. 115, 887 A.2d 1042 (2005).

counsel contended that "[t]here is absolutely no evidence before the Court [the ALJ] as to what the standard field sobriety test results were." While Mr. Shepard's attorney at times used the phrase "probable cause," as well as the statutory phrase "reasonable grounds," he at no time made or intimated any contention regarding the meaning or interpretation of the statutory language "reasonable grounds." The argument was completely factual, based on the asserted absence of substantial evidence. Counsel's entire argument was as follows:

"ATTORNEY JOHN F.X. COSTELLO:

"The third argument is when the Court looks at the reasonable grounds and excludes the impermissible PBT from [our] standpoint as the Court has agreed to do so the four corners of the reasonable grounds certification does not amount to probable cause. There is absolutely no evidence before the Court as to what the standard field sobriety test results were. They're not outlined at all. All the Court has before Your Honor is driving a motor vehicle at a high rate of speed with a strong odor of alcohol and bloodshot watery eyes. The fact that the officer chooses not to give you the test results is an indication of his own disbelief in either the test results or his belief that the test results would be indicative of something other than probable cause of intoxication. As Your Honor knows, the whole purpose for field sobriety tests is that odor of alcohol and bloodshot eyes standing alone is not evidence of probable cause of an individual's inability to operate a motor vehicle safely. Here we got a man that is driving a vehicle very well at a very high rate of speed. That in and of itself militates against any inference of probable cause of impaired ability to drive due to alcohol, number one. Number two, the officer chooses not to give this Court any benefit of what the field sobriety test results showed. To the extent that they don't, that is an inference against the officer and to the extent that the officer needs those field sobriety tests upon which to base his certification of probable cause to

arrest, and that's the whole reason that they're done, a failure is indicative of probable cause but compliance with or a successful completion of field sobriety tests is an indication of just the opposite. When he purposely chooses not to give you the benefit of those results there's got to be an honest inference that they would not have been helpful. Whether the Court wants to argue or whether you want to accept it under a spoliation theory or just a failure to certify under a reasonable grounds theory. He could have come in and said nystagmus gaze constitutes a failure, that the man could not walk safely, he could not do walk-and-turn, he could not do the one-leg stand. He hasn't given you the benefit of any of that. And the whole reason that he had to do them was that candidly you and I both know that it does not amount to probable cause if an individual is lawfully operating a motor vehicle, i.e. within the lanes, at a high rate of speed and simply has an odor of alcohol and bloodshot eyes. If that were the case then there would be no need for the field sobriety test."

Immediately following the above argument, the ALJ asked whether counsel had any additional arguments; the ALJ did not want to be "sandbagged" by some additional contention made later. The following colloquy occurred:

"ADMINISTRATIVE LAW JUDGE FRIEDMAN:

"Okay. Anything else?

"ATTORNEY JOHN F.X. COSTELLO:

"Not at this time.

"ADMINISTRATIVE LAW JUDGE FRIEDMAN:

"Okay. I'm going to rule so I want to know whether there are any other arguments. You stated three. I'm going to rule on all three of your arguments. I don't want you then to be telling me that you have another argument so I want to have all the arguments at once.

"ATTORNEY JOHN F.X. COSTELLO:

"I appreciate that. And what I meant by not at this time is if you don't rule in our favor and I put on

evidence, I have a right to renew my motion. Nothing more."

Counsel then had Mr. Shepard testify. At the conclusion of that testimony, counsel reiterated his argument that there was insufficient evidence and asserted that Mr. Shepard's testimony confirmed the alleged insufficiency. Again, no statutory interpretation argument was made.

The ALJ thereupon delivered an oral ruling, rejecting those arguments which the ALJ had not previously ruled upon. With respect to the principal argument by Mr. Shepard's counsel, the ALJ stated:

"The issue in this case is reasonable grounds. The reasonable grounds as stated by the officer are much more than sufficient. He has stated more than sufficient reasonable grounds to request that you take a test. That's what he was doing here. The standard field sobriety tests are identified contrary to counsel's statement. HGN, walk-and-turn, one-leg stand, he says that those tests were done."

At no time did the ALJ make any conclusions concerning the interpretation of "reasonable grounds" as used in the statute. As previously mentioned, the ALJ did point out that the statutory standard was "reasonable grounds" and not "probable cause." Nothing was said, however, about the meaning of "reasonable grounds." Finally, no statutory interpretation issue was mentioned in the ALJ's written conclusions of law.

As emphasized time after time in our cases, courts should not judicially review adjudicatory administrative decisions on grounds not raised before the administrative agency. The General Assembly, as a matter of public policy, has determined that administrative agencies and administrative law judges should initially rule upon issues falling within the jurisdiction of the agencies and ALJs. Permitting agencies and ALJs to be "sandbagged" by new legal issues raised for the first time in circuit courts is directly contrary to the legislative policy.

## III.

Even if the statutory interpretation issue were before us, there is no good reason to utilize the somewhat complicated criminal law concepts of arrest, "probable cause," "reasonable articulable suspicion," etc., with their federal law and state law components, and apply such concepts to a "reasonableness" standard in a state law civil proceeding.

There is no issue presented in this case, and rationally there could be no issue, that Mr. Shepard was lawfully arrested under Maryland law. He committed a misdemeanor in the presence of a police officer, *i.e.*, driving a motor vehicle in excess of 132 miles per hour.[3] *See* Maryland Code (2001), § 2–202(a) of the Criminal Procedure Article. No other criminal law issue is involved. The license suspension proceeding, based upon Mr. Shepard's refusal to take an alcohol concentration test, is entirely a civil administrative proceeding, subject to a statutory civil action for judicial review. While three or four issues may have been raised at the administrative hearing, the only surviving issue is whether the police officer had "reasonable grounds to believe" that Mr. Shepard was "driving ... while under the influence of alcohol [or] while impaired by alcohol ...," § 16–205.1(b)(2) of the Transportation Article.

Courts and adjudicatory agencies have traditionally applied the "reasonableness" standard in civil proceedings without utilizing or drawing analogies to criminal law concepts. A multitude of negligence cases, of all types, require triers of fact to determine the "reasonableness" of defendants' conduct. *See, e.g., Polakoff v. Turner*, 385 Md. 467, 477, 479–480, 869 A.2d 837, 843, 845 (2005) ("The trier of fact must ... evaluate whether the actions taken by the defendant were reasonable under all the circumstances. * * * [T]he trier of fact must determine whether the defendant acted reasonably given the circumstances"); *Brooks v. Lewin Realty*, 378 Md. 70, 84–85,

---

3. If, at first glance, this seems unrealistic, it should be noted that Mr. Shepard was driving a Porsche.

835 A.2d 616, 624 (2003). Similarly, in the present case, the ALJ as trier of fact should decide whether the police officer had "reasonable grounds" under all of the circumstances. The ALJ did find that "reasonable grounds" were present, and that finding was supported by substantial evidence. This should be the end of the matter.

Judge GREENE joins this concurring opinion.